Wesley Wayne HANSEN, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–05–01014–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 3, 2006.

Discretionary Review Refused Dec. 13, 2006.

John L. Denninger Jr., Houston, TX, for Appellant.

Charles A. Rosenthal, Jr., District Attorney–Harris County, Shirley Cornelius, Assistant District Attorney–Harris County, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices TAFT and NUCHIA.

## OPINION

SAM NUCHIA, Justice.

After a bench trial, the trial court found appellant guilty of stalking and assessed punishment at four years' confinement.

On appeal, appellant contends that (1) the evidence is legally insufficient to support the conviction and (2) the trial court erred in denying his motion to suppress. We affirm.

## BACKGROUND

Appellant was hired by Patrick Morrison, owner of an equestrian riding center, to perform odd jobs around Morrison's property in exchange for room and board. Morrison and his family—his wife, Aylisa, and his two daughters, Brooke, 11, and Markee, 9—lived in a house situated on the same tract of land as the equestrian center. Appellant lived in a small one-room guest house with a kitchen and bathroom. About a month after appellant had moved into the guest house, appellant gave Morrison a painting he had done. The painting depicted a nude female jumping a horse over a Harley–Davidson motorcycle. Morrison stated that he believed the female in the painting to be his 11–year–old daughter, Brooke. Morrison did not take any action against appellant at this time.

About a month after that, Brooke was approached by appellant in a community bathroom in the horse barn with a picture he said he had painted for her. This picture depicted a heart, upheld by three stakes in the ground, dripping blood into an open hole. Around this same time, Brooke found on top of her "tack box" (a horse supply storage container located in the barn area) a note saying, "Waiting ... Silently Screaming, I Love You." Brooke told her mother, Aylisa, about the painting and the note. Aylisa, when appellant was not in his quarters, went into the guest-house and found some poems and poem fragments with the "silently, screaming" language, including one titled "Ode to Brook":

Waiting ...

Silently Screaming, I Love You

Wondering—will you forever

be my mystery

my muse

my guide through the dark forest

The Morrisons, via a friend of theirs, Michael Blair, asked appellant to gather his belongings and leave the property. He did, but returned at night a few days later and, in the horse barn, placed a painting of a young woman arising from a flower, which workers found the next morning. Aylisa Morrison testified that she believed the young woman in the picture to be Brooke. At around this same time, appellant also left another painting on Brooke's tack box that said "LOVE" on it with broken glass glued-on. This painting, along with all the others found, had a "W" on the back of it.

A few months later, appellant showed up at the Morrison's house and asked to speak with Patrick. Patrick was unavailable, but Aylisa, warned by Blair that appellant might be inquiring at their house for Patrick, brandished a shotgun at appellant and told him to leave the premises because she "had 911 on the phone." Appellant left and was later arrested and charged with stalking.[1]

Before trial, appellant filed a motion to suppress two pieces of evidence: the "Ode to Brooke" poem and the other fragments of poems with the "silently screaming" language. In his motion to suppress, appellant asserted that when Aylisa Morrison entered the guest-house and confiscated the evidence, she had violated his Fourth

---

1. Tex. Penal Code Ann. § 42.072 (Vernon 2003).

Amendment rights,[2] his rights under article I, section 9 of the Texas Constitution,[3] and article 18.04 of the Code of Criminal Procedure.[4] The trial court carried the motion with the trial. When the State introduced the exhibits at trial, appellant reminded the judge that the motion to suppress was being "carried along," and the trial court ruled, "They will be conditionally admitted at this time subject to the motion." After the State rested, appellant re-urged the motion to suppress, arguing that under "the Fourth Amendment as well as the State law article 38.22, 38.23, I believe the evidence is clear that [appellant] was living in that place when Mrs. Morrison went into the guest room ... and took away [the poem and poem fragments]." The trial court denied the motion to suppress.

### Legal Sufficiency

In his first point of error, appellant asserts that the evidence is legally insufficient to support his conviction for stalking. The standard for reviewing the legal sufficiency of the evidence is whether, after reviewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979).

The offense of stalking, under article 42.072 of the Texas Penal Code, provides in relevant part:

(a) A person commits an offense if the person, on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person, knowingly engages in conduct, including following the other person, that:

(1) the actor knows or reasonably believes the other person will regard as threatening:

(A) bodily injury or death for the other person;

(B) bodily injury or death for a member of the other person's family or household; or

(C) that an offense will be committed against the other person's property;

(2) causes the other person or a member of the other person's family or household to be placed in fear of bodily injury or death or fear that an offense will be committed against the other person's property; and

(3) would cause a reasonable person to fear:

(A) bodily injury or death for himself or herself;

(B) bodily injury or death for a member of the person's family or household; or

(C) that an offense will be committed against the person's property.

TEX. PENAL CODE ANN. § 42.072 (Vernon 2003).

Appellant first argues that there was no evidence that his conduct, as alleged in the indictment, was directed at Aylisa; rather, he contends, it was directed at Brooke. However, the statute specifically provides that the "course of conduct" does not have to be directed at only the complainant, but can be conduct that the complainant would regard as threatening bodily injury (or death) to a family member. *Id.* at § 42.072(a)(1)(B). This is the case under

---

2. U.S. CONST. amend. IV.

3. TEX. CONST. art. I, § 9.

4. TEX.CODE CRIM. PROC. ANN. art. 18.04 (Vernon 2003).

the facts in the present case. Aylisa testified that she felt that appellant's conduct threatened the safety of Brooke, her daughter.

In his next argument, appellant argues that there was no evidence that he "followed" Aylisa when he snuck back onto the Morrison's property and left the third and fourth paintings for Brooke, and then returned a few months later to the house, ostensibly in search of Patrick. The Code does not define the word "followed"; therefore, we apply the plain meaning of the word. *Lane v. State*, 933 S.W.2d 504, 514 (Tex.Crim.App.1996). *Webster's Unabridged Dictionary* defines "follow" as "... to go or come after; move behind in the same direction; ... to go in pursuit of; ... to try for or attain to; ... to engage in or be concerned as a pursuit; ...." WEBSTER'S UNABRIDGED DICTIONARY 744 (2d ed.2001). The term has also been construed broadly in the case law interpreting the statute. *See, e.g., Ploeger v. State*, 189 S.W.3d 799, 808–09 (Tex.App.-Houston [1st Dist.] 2006, no pet.) (holding that appellant's conduct of, among other things, repeatedly sending flowers, gifts, and cards to complainant, and sitting in close proximity to her at church after being asked not to by church leaders, and waiting for her in church parking lot constituted "following for purposes of stalking statute"); *Clements v. State*, 19 S.W.3d 442, 448 (Tex. App.-Houston [1st Dist.] 2000, no pet.) (holding that appellant's conduct of repeatedly showing up at complainant's house when he did not reside there and "causing himself to be where he knew [complainant] would be" constituted "following" for purposes of stalking statute). We hold that a rational trier of fact could have found that appellant's conduct fell within the plain meaning of the word "follow." Sneaking back onto the property and leaving the paintings for Brooke, were actions that could have been construed as appellant's acting "in pursuit of" Brooke or attempting to "attain" her affections or attention.

Appellant next argues that there was no evidence of another essential element of the offense: that he knew or reasonably believed Aylisa Morrison would regard his leaving the third and fourth paintings and showing up at the Morrison home a few months later inquiring after Patrick as threatening bodily injury toward Aylisa or Brooke.

The evidence shows that after he left (or gave) the first two paintings to Brooke and Aylisa found the poems to Brooke in appellant's quarters, appellant was asked to leave the Morrison's property by Michael Blair. In each of the instances of conduct charged in the indictment—sneaking back onto the property to leave the third and fourth paintings and returning to the property a few months later—it would have been reasonable for the fact finder to infer that appellant, knowing that he had been asked to leave for giving paintings to the complainant's 11–year–old daughter because of their questionable content, knew or reasonably believed that returning to the property (whether to leave paintings at night or to return to the property during the daylight) would cause Aylisa to feel threatened that he intended bodily injury to Brooke. Therefore, we reject appellant's argument.

Accordingly, we overrule his first point of error.

### *Motion To Suppress*

Appellant's second point of error is that the trial court erred in denying his motion to suppress.

■ The State argues that appellant waived this point of error on appeal. The State contends that appellant had the bur-

den to raise an exclusionary issue by producing evidence of a statutory violation, and if the evidence was not obtained in violation of any law, then it was properly admitted at trial. Because, according to the State, appellant did not produce evidence of a statutory violation, he waived his point of error.

■ To be precise, the "burden of proof is *initially* on the defendant to raise the exclusionary issue," and then the burden shifts to the State to prove that it complied with the law's requirements. *Pham v. State,* 175 S.W.3d 767, 772 (Tex.Crim.App. 2005) (emphasis added); *see also Corpus v. State,* 931 S.W.2d 30, 32 (Tex.App.-Austin 1996, pet. dism'd).

■ At trial, appellant argued
I would move to suppress [the evidence] on the Fourth Amendment as well as the State law article 38.22, 38.23.[5] I believe the evidence is clear that my client, Mr. Hansen, was living in that place when [Aylisa] went into the guest room ... and seized and took away [the poems]; ... I think that [the] testimony [ ] from all the State's witnesses is that he was—Mr. Hansen was living there.
We conclude that this was enough to notify the trial court, with sufficient specificity, of appellant's objection that Aylisa's actions amounted to a violation of the laws of Texas and his request that the evidence be excluded under article 38.23.[6] *Young v. State,* 826 S.W.2d 141, 150 (Tex.Crim.App. 1991). Appellant has not waived his point of error.

■ We now turn to the merits of appellant's claim. Article 38.23 provides that no evidence obtained by an officer or person in violation of the Constitution or laws of the State of Texas shall be admitted in evidence against the accused in a criminal case. TEX.CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon 2005). In *Jenschke v. State,* the Court of Criminal Appeals held that, when a non-governmental actor takes property that is evidence of a crime without the consent of the owner and with the intent to turn the evidence over to the police, article 38.23 may not be triggered and the evidence may not have to be excluded. 147 S.W.3d 398, 402 (Tex.Crim. App.2004). The question for a court in a case of criminal law is whether the non-governmental actor's conduct violated a law of the State of Texas. *Id.* at 403. We then look at the evidence to determine whether it is sufficiently clear for us to determine the intent of the non-governmental actor. *Id.* That is, did this non-governmental actor take the evidence with the intent to turn it over to law enforcement authorities.

Here, Aylisa took appellant's poems and poem fragments from his guesthouse and clearly intended to deprive appellant of this property. However, she took the evidence with the intent to turn it over to the police. Aylisa testified that after she and her husband discussed the contents of the poems found in appellant's quarters, they decided to call the police. When the police arrived she showed them the poems. A rational trier of fact could have concluded that she took the evidence with the intent of turning it over to the police and, therefore, did not commit a burglary. We hold that the trial court did not abuse its discretion in admitting the evidence. *Cf. Jenschke,* 147 S.W.3d at 402–03 (holding that

---

**5.** TEX.CODE CRIM. PROC. ANN. arts. 38.22, 38.23 (Vernon 2005).

**6.** The Fourth Amendment of the United States Constitution does not apply in this case because Aylisa Morrison is not a state actor nor

was she acting "as an instrument or agent of the Government." *Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 613–14, 109 S.Ct. 1402, 1411, 103 L.Ed.2d 639 (1989).

when parents of sexual assault victim broke into vehicle of person whom their daughter had told them attacked her and obtained evidence, but did not turn that evidence over to police for two years, article 38.23 requires exclusion of that evidence).

Accordingly, we overrule appellant's second point of error.

## CONCLUSION

We affirm the judgment of the trial court.