NO. 07-09-00119-CR, 07-09-00120-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

MAY 25, 2010

RYAN LANCE HUTTON, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

FROM THE 251ST DISTRICT COURT OF RANDALL COUNTY;

NO. 20,480-C, 20-481-C; HONORABLE ANA ESTEVEZ, JUDGE

Before CAMPBELL and PIRTLE and BOYD, S.J.[1]

**OPINION**

Appellant Ryan Lance Hutton appeals from his convictions for the offenses of stalking and the resulting concurrent sentences of imprisonment for twenty years in the Institutional Division of the Texas Department of Criminal Justice. Via three issues, appellant contends a defect in the information affected his substantial rights and the evidence presented at trial was legally and factually insufficient to support his conviction. We will modify the judgments and as modified, affirm.

---

[1] John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

Background

In September 2008, appellant was charged by indictment with stalking two individuals on May 8 of that year. Appellant moved to quash the indictment, arguing the stalking statute makes it an offense to stalk a single victim on more than one occasion, not one victim on one occasion and another victim on another occasion as the indictment alleged. After a hearing, the court sustained that motion. Thereafter, the State filed separate felony complaints and informations alleging appellant stalked each victim on more than one occasion.[2] By joint motion of the parties, all of the pleadings filed in the original cause were transferred to the two newly-filed causes.

In February 2009, a bench trial was held on the two newly-filed causes. At trial, each of the victims testified about the events that led to the stalking allegations against appellant. The first victim testified that about daybreak on the morning of May 8, 2008, she went running alone on a one-mile stretch of 45th Street in Amarillo. She testified that during a span of several minutes,[3] a man driving a Honda followed her. She said he more than once turned off of 45th Street into adjacent neighborhoods, but returned to follow her. Frightened after the Honda made a u-turn in the street behind her, she

---

[2] See Tex. Penal Code Ann. § 42.072 (Vernon 2003). Appellant plead true to the enhancement paragraph set forth in each information, enhancing his maximum potential imprisonment from 10 years to 20 years. See Tex. Penal Code Ann. §§ 12.32, 12.33 (Vernon 2003).

[3] The victim testified she was running "about an 8-minute mile" pace. During cross-examination, the victim agreed appellant followed her for approximately six minutes.

concentrated on the vehicle's license plate number and eventually ran to a convenience store. She gave the clerk a license plate number that later was traced to appellant and his four-door 1994 Honda. The victim identified appellant in a photo lineup as the person who followed her.[4]

The second victim, a ten-year-old girl, also testified at trial. She testified that on the afternoon of May 8, she walked home from a nearby park and was followed by a man driving a car she thought was a blue Honda. After following her for something over a block, the man passed her, going out of her sight. Shortly after, the girl saw the car driving down her street. When she reached her house, the car was there and the driver asked her through the open car window if she would help him find his dog. After he asked the girl for help a second time, the man drove away when an adult opened the front door of the house. The adult called out to a neighbor who was backing out of his drive-way, asking that he follow the car. The girl testified she was nervous that the driver of the Honda was going to abduct her or hurt her when she realized the car was following her. The girl picked two photographs out of a police photo lineup, one of which was appellant's. The neighbor, who followed the car, saw the driver when the car made a u-turn and obtained the car's license plate number, also identified appellant in a photo lineup.

---

[4] The victim also identified the photograph of another individual as the person who followed her that day. Appellant does not challenge the evidence identifying him as the stalker, so we do not address it further.

Appellant testified on his own behalf at trial, stating he did not stalk either individual and had never seen them before trial. He also provided an alibi, telling the court he believed he loaned his car to a friend that day and stayed at his girlfriend's house. Appellant's girlfriend testified appellant was with her on May 8. Appellant's friend testified he did not see appellant that day and had never borrowed appellant's car.

The trial court found appellant guilty of each offense and sentenced him to imprisonment for a term of twenty years for each cause, to be served concurrently. This appeal followed.

*Defective Information*

Our state's stalking statute, Penal Code section 42.072, provides:

(a) A person commits an offense if the person, on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person, knowingly engages in conduct, including following the other person, that:

(1) the actor knows or reasonably believes the other person will regard as threatening:

(A) bodily injury or death for the other person;

(B) bodily injury or death for a member of the other person's family or household; or

(C) that an offense will be committed against the other person's property;

(2) causes the other person or a member of the other person's family or household to be placed in fear of bodily injury or death or fear that an offense will be committed against the other person's property; and

(3) would cause a reasonable person to fear:

(A) bodily injury or death for himself or herself;

(B) bodily injury or death for a member of the person's family or household; or

(C) that an offense will be committed against the person's property.

Tex. Penal Code Ann. § 42.072 (Vernon 2003). All three of appellant's issues on appeal focus on the statute's phrase "on more than one occasion."

In appellant's first issue, he points out the language "on more than one occasion" was absent from the informations, and argues its absence affected his substantial rights. The State argues this issue is not preserved for our review, and we agree.

Appellant did not object to the asserted defect in the informations prior to trial. A defendant forfeits the right to object to a defect of form or substance in an information if he does not object before the date trial commences. Tex. Code Crim. Proc. Ann. art. 1.14(b) (Vernon 2005);[5] *State v. Murk*, 815 S.W.2d 556, 558 (Tex.Crim.App.1991). *Accord Clements v. State*, 19 S.W.3d 442 (Tex.App.–Houston [1st Dist.] 2000, no pet.) (finding similar contention waived for same reason). The information charging appellant with stalking the runner each contained a paragraph alleging appellant followed her on May 8, and a paragraph by which it was again "further present[ed]" that on May 8, he

---

[5] Article 1.14(b) provides that "[i]f the defendant does not object to a defect, error or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in any other post conviction proceeding." Tex. Code Crim. Proc. Ann. art. 1.14(b) (Vernon 2005).

5

followed the runner. The information charging appellant with stalking the ten-year-old similarly contained two paragraphs, each alleging he followed the victim on May 8. Nonetheless, as noted, appellant contends on appeal the informations were deficient because they did not contain language alleging he followed the victims in violation of the statute on more than one occasion. Appellant filed a motion taking exception to the substance of the informations, but neither the motion nor appellant's argument to the trial court concerning it complained of omission of the phrase "on more than one occasion." *See Sorto v. State,* 173 S.W.3d 469, 476 (Tex.Crim.App. 2005) (stating that when the grounds urged at trial do not comport with those urged on appeal, the latter have not been preserved for review); *Lusk v. State,* 82 S.W.3d 57, 60 (Tex.App.–Amarillo 2002, pet. ref'd) (noting same). Nothing is preserved for our review on the issue presented on appeal. We overrule appellant's first issue.

*Legal and Factual Sufficiency*

In appellant's second and third issues, he contends the evidence presented at trial was legally and factually insufficient to show he stalked the victims on more than one occasion. Instead, he argues, the evidence shows he encountered each victim only on one occasion, on May 8. The State argues the record supports appellant's convictions because each time appellant drove out of sight and then returned to follow the victims on that day constituted a separate occasion as required by the statute.

In reviewing issues of legal sufficiency, an appellate court views the evidence in the light most favorable to the verdict to determine whether, based on that evidence and reasonable inferences therefrom, a rational jury could have found each element of the

offense beyond a reasonable doubt. *Swearingen v. State,* 101 S.W.3d 89, 95 (Tex.Crim.App. 2003); *Conner v. State,* 67 S.W.3d 192, 197 (Tex.Crim.App. 2001), *citing Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). If, given all of the evidence, a rational jury would necessarily entertain a reasonable doubt of the defendant's guilt, due process requires that we reverse and order a judgment of acquittal. *Swearingen,* 101 S.W.3d at 95, *citing Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex.Crim.App. 1992), *cert. denied,* 507 U.S. 975,113 S.Ct. 1422, 122 L.Ed.2d 791 (1993).

Reviewing its factual sufficiency, we consider the evidence in a neutral light, favoring neither the State nor the defendant. *Grotti v. State,* 273 S.W.3d 273, 283 (Tex.Crim.App. 2008). A factual sufficiency review considers whether the evidence supporting guilt, though legally sufficient, is so weak the finding seems clearly wrong and manifestly unjust, or evidence contrary to the finding is such that it is against the great weight and preponderance of the evidence. *Grotti,* 273 S.W.3d at 283; *Marshall v. State*, 210 S.W.3d 618, 625 (Tex.Crim.App. 2006)*; Watson v. State*, 204 S.W.3d 404, 414-15 (Tex.Crim.App. 2006).

The first victim, the runner, testified that about 6:40 a.m., during her run, she noticed a vehicle, a Honda, pull into a bank parking lot on 45th Street. She testified that as she "got parallel with the vehicle the vehicle started moving with me as I was running." The Honda then drove past the runner and turned south into the adjacent residential neighborhood. The runner lost sight of the vehicle for a short time. The Honda emerged from the neighborhood and drove very slowly by the runner. The Honda then turned north into the residential neighborhood to the north of 45th Street,

causing the runner to lose sight of the Honda again. Each time the appellant would disappear from sight, the runner "believed that the stalking was over" and "then he would reappear." Shortly thereafter, the Honda passed the runner from behind and the driver looked at her as he drove by. The Honda turned into the first neighborhood again and the runner lost sight of the Honda a third time. The Honda came out of the neighborhood ahead of the runner, and turned in her direction. After driving past her, the Honda made a u-turn on 45th Street. The runner testified that by that time, she was fearful for her life and began to concentrate on memorizing the Honda's license plate number. The Honda turned back into the neighborhood but quickly came back out. The runner began sprinting toward a convenience store. The next time the runner saw the Honda, it was sitting in the parking lot of a church on the south side of 45th Street. She "just ran as fast as I could and he started coming out of that parking lot, like speeding up and, you know, just almost, you know trying to scare me. You know, just scaring me. And I ran as fast as I could past it and . . . I ran into the [convenience store] parking lot." As she ran into the store, the runner told the clerk someone was following her and to write down the license plate number she had memorized.[6] The Honda drove past the front doors of the convenience store, very slowly. The runner testified she saw the driver of the Honda was sitting very low in the seat of the car with the windows halfway down. She was able to see the driver from his mouth up to the top of his head.

The ten-year-old victim testified that on May 8, she was at an Amarillo park playing ball with friends, some four blocks from her home. While walking home, she

_____

[6] The license number she gave the clerk was the same number the ten-year-old victim's neighbor gave police that afternoon.

8

noticed a car she thought was a blue Honda. She saw that the driver was leaning "pretty far" back in the seat. The car followed the girl for a while and then passed her, going out of her sight. She continued walking for another one to two blocks and turned onto her street. When she reached her house, the car [approached the girl] and the driver asked, through the car window, if she would help him find his dog. After the driver asked the girl for help a second time, an adult opened the front door of the house and asked who she was talking to. The driver drove away. The girl testified she got nervous that the driver of the Honda was going to abduct her or hurt her when she realized the car was following her. Both the girl and a neighbor later identified appellant in a photographic lineup as the person they saw that day.[7]

To constitute the offense of stalking, our statute requires proof the defendant engaged in conduct "on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person . . . ." Tex. Penal Code Ann. § 42.072 (Vernon 2003). Guilt thus requires the finder of fact to find instances of prohibited conduct that are sufficiently related to be "pursuant to the same scheme or

---

[7] The trial judge also heard from two other witnesses who testified to similar encounters in May 2008. One witness testified a young man in a bluish-gray, four-door Honda Accord repeatedly followed her while she was walking her dogs on May 11. The driver drove past her, pulled onto an adjacent street out of her sight, and returned to drive by her again and stare. This occurred about eight times and caused the witness to be concerned for her safety. The witness identified appellant in a photo lineup. The second witness, an eleven-year-old girl, testified to her repeated and fear-inducing encounters with a man driving a small blue car as she was riding her bike to a friend's house on May 17. The driver once spoke to her through the car's passenger-side window. After fleeing down an alley only to encounter the car again at the end of the block, she ran into her friend's fenced back yard. Her friend's mother testified the girl was shaking and crying. The girl later picked appellant's photograph out of a photo lineup.

9

course of conduct," but sufficiently discrete to constitute "more than one occasion."  The statute does not define either phrase.

Words in a statute are to be read in context and construed according to the rules of grammar and common usage. Tex. Gov't Code Ann. § 311.011(a) (Vernon 2005); Tex. Penal Code Ann. § 1.05(b) (Vernon 2003); *Ex parte Anderson,* 902 S.W.2d 695, 699 (Tex.App.–Austin 1995, pet. ref'd). Undefined words in a statute are ordinarily given their plain meaning unless the statute shows that they were used in some other sense. *Daniels v. State*, 754 S.W.2d 214, 219 (Tex.Crim.App.1988); *State v. Wofford,* 34 S.W.3d 671, 680 (Tex.App.–Austin 2000, no pet.). In construing the plain meaning of the language of a statute, courts may consult dictionary definitions. *See Hansen v. State*, 224 S.W.3d 325, 329 (Tex.App.—Houston [1st Dist.] 2006, pet. ref'd) (making use of dictionary definition of term in stalking statute); s*ee generally Bingham v. State*, 913 S.W.2d 208, 209-10 (Tex.Crim.App.1995).

Arguing the evidence shows he followed each of the victims on May 8 on only one occasion, appellant points to cases in which Texas courts have applied our stalking statute.  *See Sawyer v. State,* No. 12-07-00077-CR, 2008 Tex.App. LEXIS 1975, 2008 WL 726369 (Tex.App.–Tyler, 2007, pet. dism'd); *Hansen*, 224 S.W.3d 325.  Here, the events involving the runner that the State contends show appellant followed her on more than one occasion took place within minutes of each other, and along a stretch of street less than a mile in length.  The elapsed time between the events involving the ten-year-old is less clear from the record but they similarly occurred within a relatively short span of time and within two residential blocks.  Appellant is correct that *Sawyer* and *Hansen* involve stalking incidents occurring on different days, sometimes months

10

apart, and at different locations. *Sawyer*, at \*2-4; *Hansen*, 224 S.W.3d at 327. But neither opinion addresses the issue presented here, and we cannot agree they place boundaries on the usage of the word "occasion."

Considering the plain meaning and common usage of the word "occasion," we find guidance in the dictionary entry defining the word as "a time at which something happens: INSTANCE." Merriam-Webster's Collegiate Dictionary 857-58 (11th ed.). The entry contains the synonyms "happening" and "incident." *Id.*

We see nothing in the plain meaning or common usage of the term "occasion" to require the elapse of a particular or minimum interval of time for events to occur on "more than one occasion." [8] A fact finder could determine that all of appellant's conduct directed toward the runner on May 8 occurred on one occasion, and that his conduct on that day thus does not meet the terms of the stalking statute. But viewing the evidence in the light most favorable to the court's conclusion, we think a finder of fact rationally also could see the sequence of events as including more than one occasion of following. Specifically, we think the trial court rationally could have viewed the runner's testimony appellant made a u-turn and followed her as she ran in fear down the middle of the street spoke of one instance and her testimony that she next saw appellant's car in the church parking lot after which he drove behind her as she sprinted to the

---

[8] *See State v. Russell,* 922 A.2d 191, 205 (Conn.App. 2007) (applying stalking statute requiring proof defendant "repeatedly" followed victim and noting statute "contains no explicit limitations as to the temporal interval between acts"); *State v. Cummings,* 701 A.2d 663, 679-80 (Conn.App. 1997) (rejecting challenge to jury instruction, applying term "repeatedly," stating that state's stalking statute "does not attempt to place the boundaries of time or space around a prescribed repetitive conduct" and informing jury that was their function as finders of fact).

convenience store, as another instance. That appellant was out of the woman's sight for only a short time as she ran, likely under a minute, is not determinative. The evidence is legally sufficient to support appellant's conviction.

Nor can we agree that the evidence supporting a conclusion appellant followed the runner on more than one occasion, viewed in the neutral light appropriate to a factual sufficiency review, is so weak that the conclusion seems clearly wrong and manifestly unjust, or that contrary evidence is such as to make the conclusion against the great weight and preponderance of the evidence. Accordingly, we find the evidence factually sufficient to support appellant's conviction.

Applying the same analysis, the court rationally could have found appellant's conduct on the afternoon of the same day, involving the ten-year-old, also contravened the stalking statute. The girl's testimony spoke of her encounter with appellant during her walk home. He followed her in a way that caused her fear, then left her sight. Then, after she had walked a further distance and reached her house, she there encountered appellant a second time. A rational fact finder, viewing the evidence in the light most favorable to that conclusion, could have determined the second encounter, although occurring within two blocks and within a few minutes of the first, constituted a second occasion of following prohibited by the statute. *See Hansen,* 224 S.W.3d at 329. And we find the evidence supporting that conclusion, viewed in a neutral light, is neither so weak nor so contravened by contrary evidence as to be clearly wrong and manifestly unjust, or against the great weight and preponderance of the evidence. The evidence is both legally and factually sufficient to support appellant's conviction. We overrule appellant's second and third issues.

*Reformation of Judgments*

In our review of the record, it came to our attention that each of the judgments includes a clerical error. Page one of each judgment indicates appellant plead "guilty" to the offense. The reporter's record indicates appellant plead "not guilty" to each offense.

This court has the power to modify the judgment of the court below to make the record speak the truth when we have the necessary information to do so. Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex.Crim.App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529-30 (Tex.App.--Dallas 1991, pet. ref'd). "The authority of an appellate court to reform an incorrect judgment is not dependent upon the request of any party, nor does it turn on the question of whether a party has or has not objected in the trial court." *Asberry*, 813 S.W.2d at 529-30.

Because the record unambiguously indicates appellant plead "not guilty" to each offense, we modify each judgment to correct the error. As modified, we affirm the judgments of the trial court.

James T. Campbell
Justice

Publish.