NO. 07-09-00119-CR, 07-09-00120-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL E

 



MAY
25, 2010

 



 

RYAN LANCE HUTTON, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 



 

 FROM THE 251ST DISTRICT COURT OF RANDALL
COUNTY;

 

NO. 20,480-C, 20-481-C; HONORABLE ANA ESTEVEZ, JUDGE



 



 

Before CAMPBELL
and PIRTLE and BOYD, S.J.[1]

 

 

OPINION

 

 

Appellant Ryan
Lance Hutton appeals from his convictions for the offenses of stalking and the
resulting concurrent sentences of imprisonment for twenty years in the
Institutional Division of the Texas Department of Criminal Justice.  Via three issues, appellant contends a defect
in the information affected his substantial rights and the evidence presented
at trial was legally and factually insufficient to support his conviction.  We will modify the judgments and as modified,
affirm.

Background








In September 2008,
appellant was charged by indictment with stalking two individuals on May 8 of
that year.  Appellant moved to quash the
indictment, arguing the stalking statute makes it an offense to stalk a single
victim on more than one occasion, not one victim on one occasion and another
victim on another occasion as the indictment alleged.  After a hearing, the court sustained that
motion.  Thereafter, the State filed
separate felony complaints and informations alleging
appellant stalked each victim on more than one occasion.[2]  By joint motion of the parties, all of the
pleadings filed in the original cause were transferred to the two newly-filed
causes.

In February 2009,
a bench trial was held on the two newly-filed causes.  At trial, each of the victims testified about
the events that led to the stalking allegations against appellant.  The first victim testified that about
daybreak on the morning of May 8, 2008, she went running alone on a one-mile
stretch of 45th Street in Amarillo. She testified that during a span
of several minutes,[3]
a man driving a Honda followed her.  She
said he more than once turned off of 45th Street into adjacent
neighborhoods, but returned to follow her. 
Frightened after the Honda made a u-turn in the street behind her, she
concentrated on the vehicle’s license plate number and eventually ran to a
convenience store.  She gave the clerk a
license plate number that later was traced to appellant and his four-door 1994
Honda. The victim identified appellant in a photo lineup as the person who
followed her.[4]  

The second victim,
a ten-year-old girl, also testified at trial. 
She testified that on the afternoon of May 8, she walked home from a
nearby park and was followed by a man driving a car she thought was a blue
Honda.  After following her for something
over a block, the man passed her, going out of her sight.  Shortly after, the girl saw the car driving
down her street.  When she reached her
house, the car was there and the driver asked her through the open car window
if she would help him find his dog. 
After he asked the girl for help a second time, the man drove away when
an adult opened the front door of the house. 
The adult called out to a neighbor who was backing out of his drive-way,
asking that he follow the car.  The girl
testified she was nervous that the driver of the Honda was going to abduct her
or hurt her when she realized the car was following her. The girl picked two
photographs out of a police photo lineup, one of which was appellant’s.  The neighbor, who followed the car, saw the
driver when the car made a u-turn and obtained the car’s license plate number,
also identified appellant in a photo lineup.

Appellant
testified on his own behalf at trial, stating he did not stalk either
individual and had never seen them before trial.  He also provided an alibi, telling the court
he believed he loaned his car to a friend that day and stayed at his girlfriend=s house.   Appellant=s girlfriend
testified appellant was with her on May 8. 
Appellant’s friend testified he did not see appellant that day and had
never borrowed appellant=s car. 









The trial court
found appellant guilty of each offense and sentenced him to imprisonment for a
term of twenty years for each cause, to be served concurrently.  This appeal followed.

Defective
Information

Our
state’s stalking statute, Penal Code section 42.072, provides:

(a) A
person commits an offense if the person, on more than one occasion and pursuant
to the same scheme or course of conduct that is directed specifically at
another person, knowingly engages in conduct, including following the other
person, that:

(1) the actor knows or reasonably believes the other person will
regard as threatening: 

(A) bodily injury
or death for the other person; 

(B) bodily injury
or death for a member of the other person's family or household; or 

(C) that an offense will be committed
against the other person's property; 

(2)
causes the other person or a member of the other person's family or household
to be placed in fear of bodily injury or death or fear that an offense will be
committed against the other person's property; and 

(3) would cause a reasonable person to fear: 

(A) bodily injury or death for himself or herself; 

(B) bodily injury or death for a member of the person's family
or household; or 

(C) that an offense will be committed against the person's
property.

Tex. Penal Code Ann. '
42.072 (Vernon 2003). 
All three of appellant’s issues on appeal focus on the statute’s phrase
“on more than one occasion.”

In appellant=s first issue, he
points out the language Aon more than one occasion@ was absent from
the informations, and argues its absence affected his
substantial rights.  The State argues
this issue is not preserved for our review, and we agree.

Appellant did not
object to the asserted defect in the informations
prior to trial.  A defendant forfeits the
right to object to a defect of form or substance in an
information if he does not object before the date trial commences. Tex. Code Crim. Proc. Ann. art. 1.14(b)
(Vernon 2005);[5]
State v. Murk, 815 S.W.2d 556, 558 (Tex.Crim.App.1991).  Accord Clements v. State,
19 S.W.3d 442 (Tex.App.BHouston
[1st Dist.] 2000, no pet.) (finding similar
contention waived for same reason).  The
information charging appellant with stalking the runner each contained a
paragraph alleging appellant followed her on May 8, and a paragraph by which it
was again “further present[ed]” that on May 8, he
followed the runner.  The information
charging appellant with stalking the ten-year-old similarly contained two
paragraphs, each alleging he followed the victim on May 8.  Nonetheless, as noted, appellant contends on
appeal the informations were deficient because they
did not contain language alleging he followed the victims in violation of the
statute on more than one occasion. 
Appellant filed a motion taking exception to the substance of the informations, but neither the motion nor appellant’s
argument to the trial court concerning it complained of omission of the phrase Aon more than one
occasion.@ See
Sorto v. State, 173 S.W.3d 469, 476 (Tex.Crim.App. 2005) (stating that when the grounds urged at
trial do not comport with those urged on appeal, the latter have not been
preserved for review); Lusk v. State, 82 S.W.3d 57, 60 (Tex.App.BAmarillo
2002, pet. ref=d) (noting same).
Nothing is preserved for our review on the issue presented on appeal.  We overrule appellant=s first issue.

Legal and Factual
Sufficiency

In appellant=s second and third
issues, he contends the evidence presented at trial was legally and factually
insufficient to show he stalked the victims on more than one occasion.  Instead, he argues, the evidence shows he
encountered each victim only on one occasion, on May 8.  The State argues the record supports
appellant=s convictions because each time appellant
drove out of sight and then returned to follow the victims on that day
constituted a separate occasion as required by the statute.  

In reviewing
issues of legal sufficiency, an appellate court views the evidence in the light
most favorable to the verdict to determine whether, based on that evidence and
reasonable inferences therefrom, a rational jury
could have found each element of the offense beyond a reasonable doubt.  Swearingen v. State, 101 S.W.3d 89, 95
(Tex.Crim.App. 2003); Conner v. State, 67
S.W.3d 192, 197 (Tex.Crim.App. 2001), citing
Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct.
2781, 61 L.Ed.2d 560 (1979).  If, given
all of the evidence, a rational jury would necessarily entertain a reasonable
doubt of the defendant=s guilt, due process requires that we
reverse and order a judgment of acquittal. 
Swearingen, 101 S.W.3d at 95, citing Narvaiz
v. State, 840 S.W.2d 415, 423 (Tex.Crim.App.
1992), cert. denied, 507 U.S. 975,113 S.Ct.
1422, 122 L.Ed.2d 791 (1993). 

Reviewing its
factual sufficiency, we consider the evidence in a neutral light, favoring
neither the State nor the defendant. Grotti v. State, 273 S.W.3d 273, 283 (Tex.Crim.App.
2008).  A factual sufficiency
review considers whether the evidence supporting guilt, though legally
sufficient, is so weak the finding seems clearly wrong and manifestly unjust,
or evidence contrary to the finding is such that it is against the great weight
and preponderance of the evidence.  Grotti,
273 S.W.3d at 283; Marshall v. State, 210 S.W.3d 618, 625 (Tex.Crim.App. 2006); Watson v. State, 204 S.W.3d
404, 414-15 (Tex.Crim.App. 2006).  

The
first victim, the runner, testified that about 6:40 a.m., during her run, she
noticed a vehicle, a Honda, pull into a bank parking lot on 45th
Street.  She testified that as she Agot
parallel with the vehicle the vehicle started moving with me as I was running.@  The Honda then drove past the runner and
turned south into the adjacent residential neighborhood.  The runner lost sight of the vehicle for a
short time.  The Honda emerged from the
neighborhood and drove very slowly by the runner.  The Honda then turned north into the
residential neighborhood to the north of 45th Street, causing the
runner to lose sight of the Honda again. Each time the appellant would
disappear from sight, the runner Abelieved
that the stalking was over@ and Athen
he would reappear.@ Shortly thereafter, the Honda
passed the runner from behind and the driver looked at her as he drove by.  The Honda turned into the first neighborhood
again and the runner lost sight of the Honda a third time.  The Honda came out of the neighborhood ahead
of the runner, and turned in her direction. 
After driving past her, the Honda made a u-turn on 45th
Street.  The runner testified that by
that time, she was fearful for her life and began to concentrate on memorizing
the Honda=s license plate number.  The Honda turned back into the neighborhood
but quickly came back out.  The runner
began sprinting toward a convenience store. 
The next time the runner saw the Honda, it was sitting in the parking
lot of a church on the south side of 45th Street.  She Ajust
ran as fast as I could and he started coming out of that parking lot, like
speeding up and, you know, just almost, you know trying to scare me.  You know, just scaring me.  And I ran as fast as I could past it and . .
. I ran into the [convenience store] parking lot.@  As she ran into the store, the runner told
the clerk someone was following her and to write down the license plate number
she had memorized.[6]  The Honda drove past the front doors of the
convenience store, very slowly.  The
runner testified she saw the driver of the Honda was sitting very low in the
seat of the car with the windows halfway down. 
She was able to see the driver from his mouth up to the top of his head.

The
ten-year-old victim testified that on May 8, she was at an Amarillo park
playing ball with friends, some four blocks from her home.  While walking home, she noticed a car she
thought was a blue Honda. She saw that the driver was leaning Apretty
far@ back
in the seat. The car followed the girl for a while and then passed her, going
out of her sight.  She continued walking
for another one to two blocks and turned onto her street.  When she reached her house, the car
[approached the girl] and the driver asked, through the car window, if she
would help him find his dog.  After the
driver asked the girl for help a second time, an adult opened the front door of
the house and asked who she was talking to. The driver drove away.  The girl testified she got nervous that the
driver of the Honda was going to abduct her or hurt her when she realized the
car was following her. Both the girl and a neighbor later identified appellant
in a photographic lineup as the person they saw that day.[7]

To
constitute the offense of stalking, our statute requires proof the defendant
engaged in conduct “on more than one occasion and pursuant to the same scheme
or course of conduct that is directed specifically at another person . . .
.”  Tex. Penal Code
Ann. ' 42.072 (Vernon 2003).  Guilt thus requires the finder of fact to
find instances of prohibited conduct that are sufficiently related to be
“pursuant to the same scheme or course of conduct,” but sufficiently discrete
to constitute “more than one occasion.” 
The statute does not define either phrase.

Words
in a statute are to be read in context and construed according to the rules of
grammar and common usage. Tex. Gov't
Code Ann. ' 311.011(a) (Vernon 2005); Tex. Penal
Code Ann. ' 1.05(b) (Vernon 2003); Ex parte
Anderson, 902 S.W.2d 695, 699 (Tex.App.BAustin
1995, pet. ref=d).
Undefined words in a statute are ordinarily given their plain meaning unless
the statute shows that they were used in some other sense. Daniels v. State, 754 S.W.2d 214,
219 (Tex.Crim.App.1988); State v. Wofford, 34 S.W.3d 671, 680 (Tex.App.BAustin 2000, no pet.). In construing the plain
meaning of the language of a statute, courts may consult dictionary
definitions. See Hansen v. State, 224
S.W.3d 325, 329 (Tex.App.—Houston [1st
Dist.] 2006, pet. ref’d) (making use of dictionary
definition of term in stalking statute); see generally Bingham v. State,
913 S.W.2d 208, 209‑10 (Tex.Crim.App.1995).  

Arguing
the evidence shows he followed each of the victims on May 8 on only one
occasion, appellant points to cases in which Texas courts have applied our
stalking statute.  See Sawyer
v. State, No. 12-07-00077-CR, 2008 Tex.App. LEXIS 1975, 2008 WL 726369 (Tex.App.BTyler,
2007, pet. dism=d); Hansen, 224 S.W.3d 325.  Here, the events involving the runner that
the State contends show appellant followed her on more than one occasion took
place within minutes of each other, and along a stretch of street less than a
mile in length.  The elapsed time between
the events involving the ten-year-old is less clear from the record but they
similarly occurred within a relatively short span of time and within two
residential blocks.  Appellant is correct
that Sawyer and Hansen involve stalking incidents occurring on different days,
sometimes months apart, and at different locations.  Sawyer, at *2-4; Hansen,
224 S.W.3d at 327.  But neither opinion addresses the issue presented here, and we
cannot agree they place boundaries on the usage of the word “occasion.”

Considering
the plain meaning and common usage of the word “occasion,” we find guidance in
the dictionary entry defining the word as “a time at which something happens: instance.”  Merriam-Webster’s Collegiate Dictionary
857-58 (11th ed.). The entry contains the
synonyms “happening” and “incident.” Id.  

We see
nothing in the plain meaning or common usage of the term “occasion” to require
the elapse of a particular or minimum interval of time for events to occur on
“more than one occasion.” [8]  A fact finder could determine that all of
appellant’s conduct directed toward the runner on May 8 occurred on one
occasion, and that his conduct on that day thus does not meet the terms of the
stalking statute.  But viewing the evidence
in the light most favorable to the court’s conclusion, we think a finder of
fact rationally also could see the sequence of events as including more than
one occasion of following.  Specifically,
we think the trial court rationally could have viewed the runner’s testimony
appellant made a u-turn and followed her as she ran in fear down the middle of
the street spoke of one instance and her testimony that she next saw
appellant’s car in the church parking lot after which he drove behind her as
she sprinted to the convenience store, as another instance.  That appellant was out of the woman’s sight
for only a short time as she ran, likely under a minute, is not
determinative.  The evidence is legally
sufficient to support appellant’s conviction.

Nor
can we agree that the evidence supporting a conclusion appellant followed the
runner on more than one occasion, viewed in the neutral light appropriate to a
factual sufficiency review, is so weak that the conclusion seems clearly wrong and
manifestly unjust, or that contrary evidence is such as to make the conclusion
against the great weight and preponderance of the evidence.  Accordingly, we find the evidence factually
sufficient to support appellant’s conviction.

Applying
the same analysis, the court rationally could have found appellant’s conduct on
the afternoon of the same day, involving the ten-year-old, also contravened the
stalking statute.  The girl’s testimony
spoke of her encounter with appellant during her walk home.  He followed her in a way that caused her
fear, then left her sight.  Then, after she had walked a further distance
and reached her house, she there encountered appellant a second time.  A rational fact finder, viewing the evidence
in the light most favorable to that conclusion, could have determined the
second encounter, although occurring within two blocks and within a few minutes
of the first, constituted a second occasion of following prohibited by the
statute. See Hansen, 224 S.W.3d at 329. 
And we find the evidence supporting that conclusion, viewed in a neutral
light, is neither so weak nor so contravened by
contrary evidence as to be clearly wrong and manifestly unjust, or against the
great weight and preponderance of the evidence.  The evidence is both legally and factually
sufficient to support appellant’s conviction. We overrule appellant’s second
and third issues.

Reformation of Judgments

In our review of the record, it came to our attention
that each of the judgments includes a clerical error. Page one of each
judgment indicates appellant plead "guilty" to the offense.  The reporter's record indicates appellant
plead "not guilty" to each offense.

This court has the power to
modify the judgment of the
court below to make the record speak the truth when we have the necessary
information to do so. Tex. R. App. P.
43.2(b); Bigley v. State, 865 S.W.2d 26,
27-28 (Tex.Crim.App. 1993); Asberry v. State, 813 S.W.2d
526, 529-30 (Tex.App.--Dallas 1991, pet. ref'd). "The authority
of an appellate court to reform an incorrect judgment is not dependent upon the request of any party, nor does it turn
on the question of whether a party has or has not objected in the trial
court." Asberry, 813 S.W.2d at
529-30.

Because the record unambiguously indicates appellant
plead "not guilty" to each offense, we modify each judgment to
correct the error. As modified, we affirm the judgments of
the trial court.

 

 

                                                                                                James
T. Campbell

                                                                                                            Justice

Publish.











[1]
 John T. Boyd, Chief Justice (Ret.), Seventh
Court of Appeals, sitting by assignment. 






[2]  See Tex. Penal Code Ann. ' 42.072 (Vernon
2003).  Appellant plead true to the
enhancement paragraph set forth in each information,
enhancing his maximum potential imprisonment from 10 years to 20 years.  See Tex. Penal Code Ann. '' 12.32, 12.33
(Vernon 2003).  





[3] The victim testified
she was running “about an 8-minute mile” pace. 
During cross-examination, the victim agreed appellant followed her for
approximately six minutes.





[4] 
The
victim also identified the photograph of another individual as the person who
followed her that day.  Appellant does
not challenge the evidence identifying him as the stalker, so we do not address
it further.





[5] 
Article
1.14(b) provides that A[i]f the
defendant does not object to a defect, error or irregularity of form or
substance in an indictment or information before the date on which the trial on
the merits commences, he waives and forfeits the
right to object to the defect, error, or irregularity and he may not raise the
objection on appeal or in any other post conviction proceeding.@  Tex. Code Crim. Proc. Ann.
art. 1.14(b) (Vernon 2005). 

 





[6] The license number she gave the
clerk was the same number the ten-year-old victim’s neighbor gave police that
afternoon.  





[7] 
The
trial judge also heard from two other witnesses who testified to similar encounters
in May 2008.  One witness testified a
young man in a bluish-gray, four-door Honda Accord
repeatedly followed her while she was walking her dogs on May 11.  The driver drove past her, pulled onto an
adjacent street out of her sight, and returned to drive by her again and stare.
This occurred about eight times and caused the witness to be concerned for her
safety. The witness identified appellant in a photo lineup. The second witness,
an eleven-year-old girl, testified to her repeated and fear-inducing encounters
with a man driving a small blue car as she was riding her bike to a friend=s house on May
17.  The driver once spoke to her through
the car’s passenger-side window.  After
fleeing down an alley only to encounter the car again at the end of the block,
she ran into her friend’s fenced back yard. Her friend’s mother testified the
girl was shaking and crying. The girl later picked appellant=s photograph out
of a photo lineup.  





[8]
See State
v. Russell, 922 A.2d 191, 205 (Conn.App.
2007) (applying stalking statute requiring proof defendant “repeatedly”
followed victim and noting statute “contains no explicit limitations as to the
temporal interval between acts”); State v. Cummings, 701 A.2d 663, 679-80 (Conn.App. 1997)
(rejecting challenge to jury instruction, applying term “repeatedly,” stating
that state’s stalking statute “does not attempt to place the boundaries of time
or space around a prescribed repetitive conduct” and informing jury that was
their function as finders of fact).