**Concurring and Dissenting Opinion Filed February 7, 2024.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-22-00713-CV

**ROBERT CARROLL BEVERS, Appellant**
**V.**
**PEYTON LYNN MABRY, Appellee**

**On Appeal from the 417th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 417-52953-2022**

## CONCURRING AND DISSENTING OPINION

Before Justices Partida-Kipness, Reichek, and Miskel
Concurring and Dissenting Opinion by Justice Partida-Kipness

I concur in part and dissent in part from the majority's opinion. I concur with Part II of the majority's opinion because I agree it is unnecessary to re-evaluate the holdings of the Texas Court of Criminal Appeals or the prior holdings of this Court with respect to the constitutionality of the stalking statute. Because I would affirm the judgment, however, I respectfully dissent to the remainder of the majority opinion.

By reversing the protective order at issue here, my colleagues fail to give the trial court's findings the required deference and improperly minimize and discredit

testimony supporting the injunction. Section 42.072 of the Texas Penal Code requires proof the defendant "knowingly engages in conduct that:

> (1) constitutes an offense under Section 42.07, or that **the actor knows or reasonably should know the other person will regard as threatening:**
>
> > **(A) bodily injury or death for the other person;**
> >
> > **(B) bodily injury or death for a member of the other person's family or household or for an individual with whom the other person has a dating relationship; or**
> >
> > **(C) that an offense will be committed against the other person's property;**
>
> (2) causes the other person, a member of the other person's family or household, or an individual with whom the other person has a dating relationship to be placed in fear of bodily injury or death or in fear that an offense will be committed against the other person's property, or to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended; **<u>and</u>**
>
> (3) would cause a reasonable person to:
>
> > (A) fear bodily injury or death for himself or herself;
> >
> > (B) fear bodily injury or death for a member of the person's family or household or for an individual with whom the person has a dating relationship;
> >
> > (C) fear that an offense will be committed against the person's property; or
> >
> > (D) feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended.

TEX. PENAL CODE § 42.072(a) (emphasis added).

On appeal, Bevers argues the evidence is legally insufficient to prove he acted with the requisite mens rea of "knowingly." The majority agrees with Bevers and sustains his sufficiency challenge by concluding "there is a complete absence of evidence to prove Bevers acted with the requisite intent of knowingly threatening to inflict bodily injury or death on Mabry or her family or to commit an offense against Mabry's property under § 42.072(a)(1)." More specifically, the majority concludes:

> There is nothing in the record showing that Bevers's conduct threatened bodily injury or death to Mabry or her family or threatened an offense against Mabry's property. To be sure, threats of harm need not be directly expressed and may be contained in veiled statements. But, in this case, the evidence does not show that Bevers ever alluded to bodily injury or another felony. Nor, for example, does it show that Bevers entered the Mabrys' house and refused to leave until a demand was satisfied. Without more, there is nothing in the record that reasonably suggests the birthday and other cards signed "Romeo," flowers, and perfume sets with the words "sweet" and "beautiful" were threatening death or bodily injury to Mabry or her family, or harm to Mabry's property

(citations omitted).

The majority appears to interpret section 42.072(a)(1) as requiring proof a defendant made an actual threat. To commit the offense of stalking, however, the complainant is not required to prove the defendant actually threatened bodily injury or death.[1] Rather, the statute requires proof the defendant "knowingly engaged in

---

[1] *See Griswold v. State*, 673 S.W.3d 423, 432–33 (Tex. App.—Dallas 2023, no pet.) (evidence sufficient where "Griswold repeatedly sent emails, letters, cds, and text messages" over a decade-long period); *see also Hutton v. State*, 313 S.W.3d 902, 908–09 (Tex. App.—Amarillo 2010, pet. ref'd) (legally sufficient evidence supported finding that reasonable person would have been placed in fear of bodily injury or death from defendant's actions, for purpose of supporting stalking conviction, where defendant exhibited pattern of behavior, including leaving numerous phone messages for victim, appearing several times at her

–3–

conduct that the actor knows or reasonably should know **the other person "will regard as threatening"** bodily injury or death for the complainant or her family or "**will regard as threatening**. . . that an offense will be committed against the other person's property." TEX. PENAL CODE § 42.072(a)(1) (emphasis added). To act knowingly under the stalking statute, Bevers did not have to threaten bodily injury or death or threaten an offense against Mabry's property. Instead, Bevers had to know or reasonably should have known Mabry would regard his conduct as threatening bodily injury or death or threatening an offense against Mabry's property.

Here, the evidence shows Mabry had been fearful for her own safety and for the safety of her parents since the April incident. Further, Mabry testified she found Bevers's actions disturbing and took them as a threat. Although Mabry did not use the magic words "bodily injury" or "death" to describe what threat Bevers's conduct indicated he planned to carry out, the record shows she considered Bevers's conduct to be a threat to harm her or her family. Rather than focus on the specific words used by Mabry, I would address whether Bevers knew or should have known Mabry would regard his conduct as threatening bodily injury or death against Mabry or her family or threatening an offense against Mabry's property.

---

apartment and other places where he knew she would be, and engaging in conduct that he knew would frighten her); *Battles v. State*, 45 S.W.3d 694, 701 (Tex. App.—Tyler 2001, no pet.) (evidence legally sufficient to support court's finding that victim feared defendant might hurt or kill her or her son where victim testified she was scared, witness observed victim to be "shaken" on one occasion when defendant followed victim to daycare, and victim once called 911 when defendant was following her).

Under this record, I would conclude the evidence is sufficient to establish Bevers had the required mens rea. Mabry's failure to use magic words to pinpoint what offenses she thinks would be committed by Bevers does not support the majority's conclusion Mabry did not or could not reasonably believe Bevers was threatening to commit bodily injury or death against her or her family. On the contrary, a reasonable woman could easily consider Bevers's conduct physically threatening. Bevers, a stranger to Mabry, left her unsolicited gifts, signed the accompanying cards as "Romeo," repeatedly drove past her parents' residence, and changed his looks and vehicle to match Mabry's father and brother. Bevers's conduct is not only "creepy," but it is also the type of conduct a reasonable woman would find physically threatening. The trial court heard the testimony, viewed the witnesses' body language, tone of voice, and demeanor, and found in Mabry's favor. I would affirm that decision.

This Court is unable to weigh the evidence in person and consider the witnesses' credibility the way a trial judge can. The applicable standard of review requires our Court to afford more deference to the trial judge's findings than the majority opinion gives.

> The appellate jurist must always remember and heed the truism that we have before us cold written records. We must afford the trial court discretion because the trial court judge is in a superior position to appraise the impact of the probative force of the evidence. The trial court judge sees and observes the witnesses, the defendants, the jurors (if any), and the lawyers; the trial court alone is in a position to witness all the participants' mannerisms and reactions. The trial court alone can

weigh the intonation of the voices and the demeanors and acts and mannerisms of the witnesses.

*Isuani v. Manske-Sheffield Radiology Grp., P.A.*, 805 S.W.2d 602, 607 (Tex. App.—Beaumont 1991, writ denied). The grounds on which the majority reverses the injunction do not follow these tenets of review. I, therefore, respectfully dissent to Part III of the majority opinion.[2]

## CONCLUSION

For the foregoing reasons, I concur in Part II of the majority opinion and respectfully dissent from the remainder.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

220713DF.P05

---

[2] Applying the applicable standards of review, I would overrule each of Bevers's appellate issues and affirm the judgment. Because the majority does not address Bevers's remaining appellate issues, however, I decline to address the merits of those issues here.