**Refugia MORENO, Appellant,**

v.

**Ronald Lee MOORE, Appellee.**

No. 13–94–223–CV.

Court of Appeals of Texas, Corpus Christi.

March 16, 1995.

Sarah R. Guidry, Rebecca C. Flanigan, Corpus Christi, for appellant.

Ronald Lee Moore, Corpus Christi, for appellee.

Before SEERDEN, C.J., and YAÑEZ and CHAVEZ, JJ.

## OPINION

YAÑEZ, Justice.

This is an appeal from a mutual protective order issued pursuant to Chapter 71 of the Family Code. Appellant, Refugia Moreno, filed an application for a protective order in which she alleged several acts of family violence against appellee, Ronald Moore. After a hearing, the trial court signed a mutual protective order which granted protective orders against both parties. By two points of error, Refugia challenges that part of the order granting a protective order against her. Ronald did not file a brief in this case. We dissolve the protective order against Refugia and affirm the protective order against Ronald.

On March 3, 1994, Refugia Moreno filed an application for a protective order in which she alleged that Ronald Moore had committed several acts of family violence against her. She alleged that from May 1993 to August 1993, they had lived as members of the same household. About August 26, 1993, they had an argument, and Ronald hit her with his fist and open hand. He threw her to the floor, grabbed her shoulders, and threw her against a wall. Her baby was crying, and he "pushed" the baby. The next day, she moved out.

On January 1, 1994, Refugia had spent the night at Ronald's house and wanted to go home. However, he tried to "force" her to "have sex" and pushed her to the couch. He put a pillow on her face and tried to suffocate her. He let her go, and she tried to call 911. He grabbed her arm and face and hit her head against the kitchen floor. He grabbed a knife and held it against her chest. Finally, the police arrived and took her home.

On February 7, Ronald came to Refugia's apartment. He was intoxicated and wanted to know who was in the apartment. She informed him that no one was in the apartment. While she was walking back inside, he threw a beer bottle into the apartment. The police arrived and arrested him for public intoxication.

On February 25, 1994, Ronald warned her, "'You better watch out when you're at the bars because I'm going to kill you.'" He also sprayed mace at her, but she ducked. On February 27, 1994, he again sprayed mace at her. The mace caused a rash on her back. Later that evening, she and her sister were riding in a truck. Ronald threw a beer

bottle at the truck, shattering its rear window. Refugia received small scratches all over her back.

She stated in her application that she was "very afraid" that Ronald was going to continue to commit acts of family violence against her and that she needed protection. She requested the trial court, after notice and hearing, to issue a protective order.

Ronald did not file a responsive pleading or an application for a protective order.

On April 6, 1994, the trial court held a hearing on Refugia's application for a protective order. Refugia and Ronald testified at the hearing. Refugia testified that on one occasion, she and her sister were using a truck to sell roses. When Refugia was getting off the truck, Ronald tried to put mace on her face. She ignored him and went into a bar. Afterwards, she and her sister drove away. Refugia testified that "[a]t the stoplight, they threw a bottle toward my sister's truck. Had glass all over the truck and all over me and my sister."

Concerning the January 1 incident, Refugia testified that she had stayed overnight at the house of Ronald's grandmother. Refugia wanted to go home, but Ronald would not let her go. She tried to call the police, but every time she called them, Ronald "went ahead and got the phone." He threw her to the kitchen and living room floors. While she was on the kitchen floor, Ronald "got a knife, and he was going to do something with the knife." Finally, the police arrived and took her home. She stated that she had received bruises from this incident.

Ronald contradicted Refugia's testimony about the January 1 incident. He testified that "there was no knife pulled" and that Refugia was thrown to the couch. The police were called twice; however, Refugia did not leave with them the first time that they were called. After he had locked the door and left, she called the police from a pay telephone and left with them the second time that they were called.

He also testified that on February 25, about 2:30 a.m. or 3:00 a.m., his sister and another person saw Refugia and another person break out his windows. From that time to the evening of February 28, he was in Orange Grove. He stated, "I don't know where she come [sic] up with this Mace incident." (The mace incidents had allegedly occurred on February 25 and 27.)

After the evidence concluded, the trial court announced that it was not going to sign the protective order unless it was mutual. Refugia's counsel advised the court that she could not prepare a mutual protective order because the Family Code prohibited it. At that point, the trial court advised counsel to "get somebody else" to hear the case.

On April 7, 1994, the trial court signed a mutual protective order in which it overruled Refugia's objection to the entry of a protective order against her. It granted a protective order in Ronald's favor against Refugia. It found that mutual protective orders were necessary to prevent family violence and that they were needed for the safety, welfare, and in the best interest of Refugia, Ronald, and their family members.

By point one, Refugia asserts that the trial court erred as a matter of law when it issued a protective order against her. She points out that Ronald did not request a protective order and that the trial court's order did not conform to the pleadings.

Section 71.121 of the Texas Family Code provides, in relevant part, that

(a) A court may not enter a single protective order that applies to both the respondent and the applicant unless the order embodies an agreement of the parties under Section 71.12(a) of this code.

(b) To apply for a protective order against an applicant, a respondent must file a separate application under this chapter.

TEX.FAM.CODE ANN. §§ 71.121(a) & (b) (Vernon Supp.1994). Section 71.12(a) of the Family Code provides that "[t]o facilitate the settlement of a proceeding under this chapter, two or more parties to the proceeding may agree in writing, subject to the approval of the court, to do or refrain from doing any act that the court could order under Section 71.11(a) of this code." TEX.FAM.CODE ANN. § 71.12(a) (Vernon Supp.1994).

Texas Rule of Civil Procedure 301 provides that "[t]he judgment of the court shall conform to the pleadings, the nature of the case proved and the verdict, if any, and shall be so framed as to give the party all the relief to which he may be entitled either in law or equity." TEX.R.CIV.P. 301. The Texas Supreme Court has said that a judgment is void when the facts show that the court rendering the judgment had no jurisdiction to enter the judgment. *Mapco, Inc. v. Forrest*, 795 S.W.2d 700, 703 (Tex.1990); *Cook v. Cameron*, 733 S.W.2d 137, 140 (Tex.1987). The pleadings invoke the trial court's jurisdiction to render a judgment, and the part of a judgment, which the pleadings do not support is considered void. *Hubbard v. Lagow*, 576 S.W.2d 163, 166 (Tex.Civ.App.—Austin 1979, writ ref'd n.r.e.); *Ex parte Fleming*, 532 S.W.2d 122, 123 (Tex.Civ.App.—Dallas 1975, no writ). Thus, a trial court may not grant relief to a party in the absence of pleadings to support that relief. *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex.1983); *Stoner v. Thompson*, 578 S.W.2d 679, 682 (Tex.1979); TEX.R.CIV.P. 301.

In the instant case, the mutual protective order did not include an agreement of the parties pursuant to section 71.12(a) of the Family Code. Further, the record does not show that the parties entered into an agreement as described by section 71.12(a). The parties' failure to comply with section 71.12(a) prevented the trial court from entering a single protective order that applied to both of them. *See* TEX.FAM.CODE ANN. § 71.121(a) (Vernon Supp.1994). Thus, Ronald had to file a *separate* application for a protective order if he wanted to receive a protective order against Refugia. *See* TEX. FAM.CODE ANN. § 71.121(b) (Vernon Supp. 1994). Since Ronald did not file any pleadings requesting a protective order, the trial court was without authority to enter that part of the mutual protective order which granted Ronald a protective order against Refugia. TEX.R.CIV.P. 301; *Cunningham*, 660 S.W.2d at 813; *Hubbard*, 576 S.W.2d at 166. We sustain the first point of error.

Due to our disposition of appellant's first point of error, we need not address her remaining point. *See* TEX.R.APP.P. 90(a).

We declare that the portion of the judgment which purports to grant a protective order against appellant, Refugia Moreno, is void and ORDER it dissolved. We AFFIRM the remainder of the judgment.