ACCEPTED
03-15-00270-CV
8023297
THIRD COURT OF APPEALS
AUSTIN, TEXAS
11/30/2015 11:51:37 PM
JEFFREY D. KYLE
CLERK

NO. 03-15-00270-CV

_____

IN THE THIRD COURT OF APPEALS
AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
11/30/2015 11:51:37 PM
JEFFREY D. KYLE
Clerk

_____

SUZANNA ECKCHUM

Appellant,

v.

THE STATE OF TEXAS FOR THE PROTECTION OF HAL KETCHUM

Appellee.

_____

**On Appeal from the County Court at Law #2,
Comal County, Texas, Cause No. C-2014-1690C,
the Honorable Charles A. Stephens, Judge Presiding**

_____

**REPLY BRIEF OF APPELLANT**

_____

Mysha Lubke
BAKER BOTTS L.L.P.
State Bar No. 24083423
98 San Jacinto Blvd., Suite 1500
Austin, TX 78701
(512) 322-2500
(512) 322-2501 (fax)
mysha.lubke@bakerbotts.com

**ATTORNEY FOR APPELLANT
SUZANNA ECKCHUM**

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

**Page**

Argument......................................................................................................1

I. The *Stalking* Protective Order is void because it did not conform to the State's pleading—which requested a *Family Violence* Protective Order— and thus did not invoke the trial court's jurisdiction.................................................................2

II. Even under the State's characterization of the facts, the State's evidence was legally and factually insufficient to prove the criminal offense of stalking.................................................7

    A. The State's scant evidence did not prove that Suzanna knew or should have known that Hal would view her conduct as a threat—explicit or implicit. ................................8

    B. The State's suggestions of "implicit threatening" are insufficient evidence, especially where the record shows no "scheme or course of conduct that is directed specifically" at Hal. ............................................12

III. The State can offer no legal authority to support its assertion that the First Amendment applies any less to citizens not gainfully employed.........................................................15

IV. Nor can the State offer any legal authority relieving the State and Hal of their obligations to provide truthful testimony.................17

V. The State misunderstands the civil procedural rules as to error preservation; waiver; findings of facts and conclusions of law; and formal bills of exception..........................................21

    A. Suzanna has not waived her First Amendment Rights.........22

    B. Suzanna's "general" pro se motion for new trial did not waive appellate arguments. ..................................................26

    C. Suzanna's challenge to this void Stalking Protective Order when the State's pleading requested a Family Violence Protective Order cannot be waived........................27

D.  The absence of the trial court's findings of facts and conclusions of law does not deny this Court the ability to review all the evidence in the record to set aside the trial court's findings. ...........................................................27

E.  No formal bill of exception was necessary in this case, and certainly not to show the falsity or improper exclusion of Hal's testimony. ...............................................28

VI.  If the Court does not void or vacate this improvidently granted Stalking Protective Order, it should at least grant Suzanna a new hearing and modify the restrictions in the order..........................29

Certificate of Compliance ...............................................................................32

Certificate of Service ......................................................................................32

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allen v. State*,
218 S.W.3d 905 (Tex. App.—Beaumont 2007, no pet.) ....................................15

*B.C. v. Rhodes*,
116 S.W.3d 878 (Tex. App.—Austin 2003, no pet.)........................................28

*Bebeau v. Bebeau*,
09-97-517 CV, 1999 WL 742765 (Tex. App.—Beaumont Sept. 23,
1999, no pet.) ...............................................................................................3

*Bever Properties, LLC v. Jerry Huffman Custom Builder, L.L.C.*,
05-13-01519-CV, 2015 WL 4600347 (Tex. App.—Dallas July 31,
2015, no pet.) ...........................................................................................4, 5

*BMC Software Belgium, N.V. v. Marchand*,
83 S.W.3d 789 (Tex. 2002)..............................................................................36

*Browning v. Prostok*,
165 S.W.3d 336 (Tex. 2005) .............................................................................3

*Chance v. Chance*,
911 S.W.2d 40 (Tex. App.—Beaumont 1995, writ denied)............................38

*Chen v. Hernandez*,
03-11-00222-CV, 2012 WL 3793294 (Tex. App.—Austin Aug. 28,
2012, pet. denied)........................................................................................23

*Clark v. State*,
03-00-00809-CR, 2001 WL 726003 (Tex. App.—Austin June 29,
2001, no pet.) ...........................................................................................12, 13

*Clarke v. State*,
270 S.W.3d 573 (Tex. Crim. App. 2008) ....................................................31, 32

*Culver v. Culver*,
360 S.W.3d 526 (Tex. App.—Texarkana 2011, no pet.)....................................36

*Daniels v. Funes*,
03-10-00317-CV, 2011 WL 2437692 (Tex. App.—Austin June 17,
2011, pet. denied).........................................................................................39

*David v. David*,
09-00-339CV, 2002 WL 1071432 (Tex. App.—Beaumont May 30,
2002, no pet.) ...............................................................................................32

*Erlewine v. Erlewine*,
03-06-00308-CV, 2007 WL 2462042 (Tex. App.—Austin Aug. 29,
2007, no pet.) ...............................................................................................40

*Ex Parte Chavez*,
371 S.W.3d 200 (Tex. Crim. App. 2012) ......................................................22

*Ex Parte Chabot*,
300 S.W.3d 768, 772 (Tex. Crim. App. 2009) ...............................................22

*Ex parte Ghahremani*,
332 S.W.3d 470 (Tex. Crim. App. 2011) ......................................................22

*Ex parte Lo*,
424 S.W.3d 10 (Tex. Crim. App. 2013), reh'g denied (Mar. 19,
2014) ............................................................................................................30

*Ford Motor Co. v. Castillo*,
279 S.W.3d 656 (Tex. 2009) .........................................................................27

*Gillenwaters v. State*,
205 S.W.3d 534 (Tex. Crim. App. 2006) ......................................................31

*Godfrey v. Godfrey*,
03-07-00220-CV, 2008 WL 3166328 (Tex. App.—Austin Aug. 8,
2008, no pet.) ...............................................................................................35

*Hansen v. State*,
224 S.W.3d 325 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).................14

iv

*Hubbard v. Lagow*,
576 S.W.2d 163 (Tex. Civ. App.—Austin 1979), writ refused n.r.e.
(June 6, 1979).................................................................................2, 33

*Hurley v. Irish-American Gay, Lesbian and Bisexual Grp. of Boston*,
515 U.S. 557 (1995)..................................................................................19

*Hutton v. State,* 313 S.W.3d 902, 905, 907 (Tex. App.—Amarillo
2010, pet. denied)......................................................................................15

*Hyundai Motor Co. v. Vasquez*,
189 S.W.3d 743 (Tex. 2006) .............................................................26, 27

*In re Commitment of Hill*,
334 S.W.3d 226 (Tex. 2011) ....................................................................26

*In re Commitment of Smith*,
422 S.W.3d 802 (Tex. App.—Beaumont 2014), review denied
(Apr. 11, 2014)..........................................................................................38

*In re F.M.B.*,
02-12-00153-CV, 2014 WL 70108 (Tex. App.—Fort Worth Jan. 9,
2014, no pet.) .............................................................................................36

*In re Lee*,
411 S.W.3d 445 (Tex. 2013) ....................................................................37

*In re S.S.*,
217 S.W.3d 685 (Tex. App.—Eastland 2007, no pet.)...............................28

*In re Sigmar*,
270 S.W.3d 289 (Tex. App.—Waco 2008, no pet.) ..................................23

*In re State*,
04-14-00282-CV, 2014 WL 2443910 (Tex. App.—San Antonio
May 28, 2014, no pet.) (holding that the "holding in *Ex parte Lo* is
not binding in this civil proceeding") ........................................................30

*Interest of C.L.*,
05-14-01520-CV, 2015 WL 682159 (Tex. App.—Dallas Feb. 18,
2015, no pet.) ...............................................................................................3

*Lankston v. State*,
827 S.W.2d 907 (Tex. Crim. App. 1992) ...............................................31

*Long v. State*,
931 S.W.2d 285 (Tex. Crim. App. 1996) ...............................................8

*McGowan v. State*,
375 S.W.3d 585 (Tex. App.—Houston [14th Dist.] 2012, pet.
denied)..................................................................................................15

*Moreno v. Moore*,
897 S.W.2d 439 (Tex. App.—Corpus Christi 1995, no writ) .............3

*Office of Pub. Util. Counsel v. Pub. Util. Com'n of Texas*,
878 S.W.2d 598 (Tex. 1994) ...............................................................24

*Perez v. Briercroft Serv. Corp.*,
809 S.W.2d 216 (Tex. 1991) .................................................................2

*Ploeger v. State*,
189 S.W.3d 799 (Tex. App.—Houston [1st Dist.] 2006, no pet.)........8, 9, 14, 15

*Porat v. Lincoln Towers Cmty. Ass'n*,
04 CIV. 3199 (LAP), 2005 WL 646093 (S.D.N.Y. Mar. 21, 2005),
aff'd, 464 F.3d 274 (2d Cir. 2006).................................................18, 19

*Sharpe v. McDole*,
03-09-00139-CV, 2010 WL 2010849 (Tex. App.—Austin May 19,
2010, pet. denied)................................................................................39

*State for Prot. of Cockerham v. Cockerham*,
218 S.W.3d 298 (Tex. App.—Texarkana 2007, no pet.).....................3

*Teague v. State*,
06-14-00053-CR, 2015 WL 2236642 (Tex. App.—Texarkana May
13, 2015, pet. denied)..........................................................................15

*Travelers Ins. Co. v. Joachim*,
315 S.W.3d 860 (Tex. 2010) .................................................................3

*Tullos v. Eaton Corp.*,
695 S.W.2d 568 (Tex. 1985) ...............................................................33

*Well Solutions, Inc. v. Stafford*,
　32 S.W.3d 313 (Tex. App.–San Antonio 2000, no pet.) ....................................26

STATUTES

Tenn. Code Ann. § 36-3-605 ....................................................................23, 25

Tex. Code Crim. Proc. §7A ...........................................................5, 6, 7, 19, 34

Tex. Crim. Proc. Code § 7A.03 .................................................................36

Tex. Fam. Code Ann. § 82.006 ...............................................................21, 22

Tex. Fam. Code Ann. § 82.008 ...................................................................21

Tex. Fam. Code Ann. § 82.009 ...................................................................21

Tex. Fam. Code §85.025 ..........................................................................5, 7

Tex. Fam. Code Ann. § 85.025(b) ...............................................................28

Tex. Fam. Code Ann. § 87.001 ...................................................................28

Tex. Gov't Code Ann. § 402.010 ................................................................30

Tex. Pen. Code §25.07 ..........................................................................19, 20

Tex. Pen. Code §42.072 ........................................................................8, 9, 14

OTHER AUTHORITIES

Senate Comm. on Criminal Justice, Bill Analysis, Tex. S.B. 97, 75th
　Leg., R.S. (1997)..................................................................................9

Tex. R. App. P 33.1....................................................................................26, 32

Tex. R. App. P. 33.2....................................................................................37

Tex. R. Civ. P. 324....................................................................................32

Tex. R. Evid. 103 ......................................................................................38

## REPLY TO THE STATE'S STATEMENT OF FACTS

Even under its characterization of the facts—most of which are irrelevant to the elements of the stalking offense alleged—the State for the Protection of Hal Ketchum cannot demonstrate that the trial court properly entered the lifetime Stalking Protective Order ("Order"). While the record shows Hal's uncorroborated allegations, the record also reflects the multitude of evidence contradicting Hal's allegations that Suzanna stalked him. Suzanna's Br. at 7-8. The significant deviations between the State's factual account and the record, particularly the 122-page trial transcript, are highlighted below, as are deviations between the State's legal analysis and the law itself.

## ARGUMENT

The Stalking Protective Order is void because it was unsupported by the pleadings, which requested a protective order under the family violence provisions of the Texas Family Code. Further, none of the State's legal arguments explain why an applicant—even musicians with any level of self-proclaimed success— would be relieved of his obligation to put forth truthful, legally and factually sufficient evidence to support his allegations. Nor do any of the State's arguments support its suggestion that Suzanna's constitutional rights are contingent her level of financial success attained in her career as a journalist and musician. In short, none of the State's legal arguments (and certainly not its multiple assertions of

1

waiver) disprove what the record shows:  the trial court erred in entering such a restrictive Order against Suzanna, unsupported by the pleadings and weight of the evidence.

**I.     The *Stalking* Protective Order is void because it did not conform to the State's pleading—which requested a *Family Violence* Protective Order— and thus did not invoke the trial court's jurisdiction.**

Even putting aside the State's arguments of waiver of due process,[1] the Order is void because the trial court did not have jurisdiction to enter a Stalking Protective Order where the State pleaded a Family Violence Protective Order. Suzanna's Br. at 42-46.  "[T]he purpose of pleadings is to give the adversary parties notice of each parties['] claims and defenses, *as well as notice of the relief sought*."  *Perez v. Briercroft Serv. Corp.*, 809 S.W.2d 216, 218 (Tex. 1991) (emphasis added).  "[T]he trial court's jurisdiction to render judgment is invoked by pleadings, and that part of a judgment the pleadings do not support is void." *Hubbard v. Lagow*, 576 S.W.2d 163, 166 (Tex. Civ. App.—Austin 1979), writ refused n.r.e. (June 6, 1979).  "A judgment is void only when it is apparent that the court rendering judgment had … no jurisdiction to enter the particular judgment, or no capacity to act."  *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 863 (Tex. 2010) (quoting *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005)).

---

[1] The inapplicability of the State's many assertions of waiver are addressed in Section V, *infra*.

2

"[A] trial court may not grant relief to a party in the absence of pleadings to support that relief." *Moreno v. Moore*, 897 S.W.2d 439, 442 (Tex. App.—Corpus Christi 1995, no writ) (declaring the portion of the judgment which purported to grant a family violence protective order void and dissolved because the pleadings did not invoke the provision of the Texas Family Code which permitted a mutual protective order); *see also State for Prot. of Cockerham v. Cockerham*, 218 S.W.3d 298, 308 (Tex. App.—Texarkana 2007, no pet.) (voiding judgment because the trial court lacked authority to enter a family violence protective order in the absence of a pleading requesting that relief). The court cannot enter judgment on an unpleaded claim. *Bebeau v. Bebeau*, 09-97-517 CV, 1999 WL 742765, at *2 (Tex. App.—Beaumont Sept. 23, 1999, no pet.) (reforming a child support order that granted medical support, when only child support was pleaded); *Interest of C.L.*, 05-14-01520-CV, 2015 WL 682159, at *2 (Tex. App.—Dallas Feb. 18, 2015, no pet.) (holding void the portions of an order terminating a parent's parental right as to two children, when the State sought termination only as to a third child).

These principles have been applied where a party's pleadings are specific in requesting relief under a particular statute, but the party asserts that it is entitled to relief under a different statute. For example, in *Bever*, a party's live pleading at the time of trial asserted a claim for breach of fiduciary duty, by citing the specific provision of the Texas Uniform Condominium Act that entitled it to that relief,

3

Section 82.103. *Bever Properties, LLC v. Jerry Huffman Custom Builder, L.L.C.*, 05-13-01519-CV, 2015 WL 4600347, at \*13 (Tex. App.—Dallas July 31, 2015, no pet.). The party argued on appeal that it was also entitled to relief under a *derivative* fiduciary duty theory, pursuant to a different provision in the same Act, Section 82.161(a). *Id.* This was asserted even though its pleading never once mentioned that second provision. *Id.* Yet, the party asked the court to infer, from the petition and its reference to the fiduciary duty claim under Section 82.103, that the party also sought relief under Section 82.161(a). *See id.* The court declined, holding that it "cannot reasonably infer that [the party] intended to plead an independent cause of action under section 82.161(a)" for derivative fiduciary duty, when its "petition contained a specific cause of action for breach of fiduciary duty…[and] referred to section 82.103." *Id.* at \*14. Thus, when a party expressly seeks relief under one statutory provision, that party cannot be granted relief under a separate provision that was never mentioned in the pleadings. *See id.*

Likewise, this *lifetime* Stalking Protective Order did not conform to the pleadings, which, as the State concedes, provided that "the [protective] order was being sought pursuant to Chapter 85 of the Texas Family Code." State Br. at 1. A protective order with a lifetime duration is not available "pursuant to Chapter 85 of the Texas Family Code." *See* Tex. Fam. Code §85.025. Nor is a Stalking Protective Order available under the Texas Family Code. *See id.* Nothing in the

4

State's pleading gave notice that the State would be seeking a *lifetime* Stalking Protective Order under Tex. Code Crim. Proc. §7A. *See* CR 4-9. As in *Bever*, that statutory provision is listed nowhere in the State's pleading. *See id.* Instead, as in *Bever*, the State's pleading makes repeated references to a different provision, namely to specific family violence provisions of the Texas Family Code. *See id.* Nowhere does the State's pleading request any duration. *See id.* The State's pleading requested only general relief "as provided by law," and the only law under which the State sought relief in its Application was the Texas Family Code. *See id.* Thus, the State's pleading did not request the relief granted: a *lifetime* Stalking Protective Order under Tex. Code. Crim. Proc. §7A.

Moreover, on appeal, the State contends that "from the beginning, the State clearly filed a stalking protective order," "the original protective [sic] was in fact a stalking protective order," and that it "never alleged that it was seeking a family violence protective order, nor could it be inferred from the application the State filed or the record." State's Br. at 20, 55. To the contrary, in the discussion of this issue between the trial court and counsel just before the start of the hearing, counsel for the State admitted "[w]e initially filed a regular Family Violence Protective Order." 2RR6.[2] The State never amended its pleading, despite the trial

---

[2] There are no transcripts available for any dates counsel was at court prior to the trial. 4SCR4-33. The court reporter provided a supplemental reporter's record after Suzanna's opening brief

court advising the State to file a trial amendment. 2RR9; *see generally* ICR, SCR, 3SCR, 4SCR.

Yet, the State asks this Court to ignore its statement to the trial court that it initially filed a regular Family Violence Protective Order to instead focus on the handful of instances where the State used the word "stalk" in its Application. State's Br. at 53-54. The State requests this ignorance despite the multitude of references in its Application invoking the Texas Family Code by specific provisions. ICR4-7. And this request is made despite the State never referencing the stalking criminal offense or Tex. Code Crim. Proc. §7A, all while alleging violence—specifically that Suzanna engaged in acts that resulted in physical harm to Hal and that Hal was "indeed physically harmed[,] suffered bodily injury[,] and was assaulted by [Suzanna] in its "Grounds for Application" where "the State explicitly laid out the acts engaged in by Appellant." State's Br. at 51; ICR6. The record shows the State pleaded family violence and sought a Family Violence Protective Order pursuant to Section 85 of the Texas Family Code. ICR4-7.

Because the State's pleading invoked the Texas Family Code, and that Code does not permit *lifetime* protective orders, the trial court had no authority to enter a lifetime Stalking Protective Order and the Order is void.

---

was filed to include proceedings on April 2, 2015, herein referenced as one of three volumes of the Supplemental Reporter's Record, "SRR."

6

**II. Even under the State's characterization of the facts, the State's evidence was legally and factually insufficient to prove the criminal offense of stalking.**

Without citation, the State asserts that "stalking occurs not only when there has been a threat of bodily injury or death, but also if one knowingly engages in conduct that would harass, annoy, alarm, abuse, torment, embarrass, or offend a reasonable person." State's Br. at 18. That is a misstatement of the law.

The stalking criminal offense has three elements of conduct, each of which needs to be met on more than one occasion: (1) a threat; (2) a subjective feeling of fear of that threat, or feeling harassed, annoyed, alarmed, abused, tormented, embarrassed, *or* offended; *and* (3) an objective analysis of any of those subjective feelings. *See* Tex. Pen. Code §42.072; Suzanna's Br. at 18-20. These three elements are *conjunctive* elements of a single crime. *See* Tex. Pen. Code §42.072 (providing a conjunctive "and" between the three elements of the crime outlined in subsections (a)(1)-(a)(3)). Further, the grammar and structure of the written statute show that all three elements, together, are necessary to prove the crime. *See Ploeger v. State*, 189 S.W.3d 799, 803 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (finding reversible error where a stalking jury charge incorrectly listed the elements of the stalking offense as disjunctive because the use of semi-colons and the conjunction "and," as well as the parallel numbering "all show that the three clauses are equal elements that together define one offense").

Moreover, the *Long* court long ago held as unconstitutionally vague the State's misinterpreted reading of the current stalking statute. *Long v. State*, 931 S.W.2d 285, 288 (Tex. Crim. App. 1996) (holding as unconstitutionally vague an earlier version of the stalking statute which made it a crime to engage in conduct that would harass, annoy, alarm, abuse, torment, or embarrass that person). The addition of the element of threatening conduct in the current stalking statute is the direct result of the legislature's attempt to draft a stalking statute that complied with *Long*'s recommendation to limit the prohibited conduct to threatening conduct to avoid First Amendment complications. *See Ploeger*, 189 S.W.3d at 806; Senate Comm. on Criminal Justice, Bill Analysis, Tex. S.B. 97, 75th Leg., R.S. (1997).

Thus, conduct that merely annoyed Hal is insufficient to prove stalking. *See id.*

**A. The State's scant evidence did not prove that Suzanna knew or should have known that Hal would view her conduct as a threat— explicit or implicit.**

To prove stalking, the State needed to first prove threatening conduct, and the record is devoid of even one single threat. Suzanna's Br. at 16-20, 25-28. So, without any citation to the record, the State proclaims that "[t]he record shows that for over a decade, and on multiple occasions, Mr. Ketchum was subjected to Appellant's explicit and implicit threats directed at himself as well as nearly every member of his family." State's Br. at 25. And in the absence of evidence of even

one threat, on appeal, the State contends that Suzanna, "implicitly," made "two separate threats of bodily injury," first by warning Hal not to mess with her, and then by "smiling really creepily." State's Br. at 31-32. Even if this occurred, which Suzanna denies and the record shows was impossible on the date Hal alleged it occurred, this could not be legally and factually sufficient evidence to support an allegation of stalking. Suzanna's Br. at 7-8, 20-32; *see also* 2RR87-89, 95. Further, while the State now claims a second threat occurred, such a claim is contrary to the testimony of the only two witnesses the State offered. Hal said his life was threatened only once, when Suzanna warned him not to mess with her. *See* 2RR43. And Hal's wife testified that Suzanna made no threats other than Suzanna allegedly making "a signal with her hand saying [']you're going to be sorry about this.[']" 2RR55, 61. There was no threatening conduct and no stalking, and thus, there should be no lifetime Order.

While the State now asserts that Suzanna's mental state[3] can be inferred from what third parties told Suzanna, the only statements in the record as to what third parties told Suzanna was based on what Hal told third parties. For example, as evidence of Suzanna's mental state, the State points to Suzanna's testimony that Dennis Hubbard told Suzanna that he asked her by email not to come on the his

---

[3] The State made a typographical error in referencing Appellant's mental health as opposed to her mental state. *See* State's Br. at 32. For the avoidance of doubt, the record is silent as to whether Hal, his wife, Suzanna, or any other witness was "mentally ill." *See generally*, 2RR.

9

property due to "some ill feelings" between she and Hal. 2RR98. In contending that this testimony is evidence that Suzanna knew Hal viewed her conduct as threatening death or bodily injury, the State asks this Court to infer that "ill feelings" is synonymous with "threatening death or bodily injury." *See* State's Br. at 29-30. But the record shows that Dennis's understanding of "ill feelings" was based on Hal telling Dennis that Hal had obtained a "restraining order" against Suzanna. *See* 2RR39. One can only assume this is the same 1997 Tennessee "restraining order" Hal swore he obtained against Suzanna. Section IV, *infra*. Whatever "ill feelings" Dennis Hubbard may have alluded to, this is not evidence sufficient to prove that Suzanna knew or should have known that her conduct cased Hal to fear of death or bodily injury.

As other evidence of Suzanna's mental state, the State now suggests that this Court can look to what the State claims were *Hal's* subjective fears as manifested by his "defensive" actions—with his wife holding him back, cussing, hollering and lunging at Suzanna as she calmly walked away—as evidence of *Suzanna's* knowledge of her allegedly threatening conduct. State's Br. 33-34; 2RR72-73. The State provides no legal authority holding that evidence of a victim's mental state is sufficient evidence of the accused's mental state. To the contrary, "[w]hile an accused's intent can be inferred, "[t]he accused's intent, however, cannot be determined solely from what the victim believed at the time of the [alleged]

10

offense." *Clark v. State*, 03-00-00809-CR, 2001 WL 726003, at \*2 (Tex. App.—Austin June 29, 2001, no pet.). In fact, during its cross-examination of Suzanna, the State drew no testimony from Suzanna to demonstrate that she had any reason to know Hal believed that she was threatening life or bodily injury by taking photographs and being in the same town as Hal. 2RR100-102.

Moreover, the State's "defensive" theory is foreclosed by the only appellate opinion involving a Section 7A stalking protective order to date, in which the appellate court declined to consider only the applicant's testimony in analyzing the evidence. In *Franklin*, the Court vacated a stalking protective order because, "absent [Applicant's] testimony, there was no evidence that [Respondent] had, on more than one occasion and pursuant to the same scheme or course of conduct, threatened or harassed Franklin with bodily injury or with injury to her property." 2014 WL 1722165, at \*10. There, the Respondent ranted at the Applicant on multiple occasions, and during a confrontation, the Applicant advanced towards the Respondent after "mutual provocation" and engaged in "mutual combat." *Id.* at \*8. Because Applicant was the party who advanced, just as Hal lunged forward at Suzanna, 2RR72, the *Franklin* court found that the Applicant did not fear death or bodily injury from the Respondent. *Id.* at \*9. And despite evidence that the parties were in the same places at the same time, the court found that this was not purposeful following, "but that the two happened to run into each other at various

11

locations within their shared community." *Id.* at *9. Despite these factual similarities, the State suggests the facts in *Franklin* are distinguishable because the parties there had known each other for only three years, whereas Hal and Suzanna met at least as early as 1994 when Suzanna interviewed Hal for a published newspaper article. State's Br. at 38; Exs. 1-2, 2RR67-70 (Suzanna's testimony). That distinction is meaningless.

Thus, contrary to the State's assertion that Hal "exhibited remarkable restraint," State's Br. at 39, instead, the record, through the testimony of an independent and unwilling shopkeeper who witnessed Hal's alleged "gun incident," shows that Hal was remarkably restrained. *See* 2RR71-72. There is no evidence that Suzanna knew her conduct would cause Hal to fear death or bodily injury.

**B.    The State's suggestions of "implicit threatening" are insufficient evidence, especially where the record shows no "scheme or course of conduct that is directed specifically" at Hal.**

Other than alleging Suzanna pointed her fingers at Hal in the shape of a gun and "smiled creepily," the State did not provide a single response to Suzanna's demonstration that Suzanna's conduct was "directed specifically" at no one. Suzanna's Br. at 28-32 (demonstrating the implausibility of Hal's allegations that Suzanna attended music venues because she knew Hal would be there); *see generally* State's Br. 30-39. While the State points to a number of cases

12

purportedly supporting what the State terms "implicit threatening," those cases more readily show the level of evidence necessary to prove a "scheme or course of conduct that is directed specifically at another person." *See* Tex. Pen. Code §42.072.

In *Hansen v. State*, the accused gave the 11-year-old victim's parent a painting depicting a nude girl resembling the child, left poems and notes for the child, and returned to the child's home in the middle of the night to leave gifts. 224 S.W.3d 325, 327 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). In *Ploeger*, the accused passed notes to the victim during church services, left gifts and for her, and called her nearly daily. 189 S.W.3d at 803. The evidence also showed that the accused directed his conduct toward the victim so much so that, intending to contact his victim, he showed up to the workplace of the victim's mother who shared the same first and last name with her daughter. *Id.* at 808. Likewise, in *Teague*, *McGowan*, and *Allen*, the accused attempted to contact the victim by phone or in-person multiple times. *Teague v. State*, 06-14-00053-CR, 2015 WL 2236642, at *7 (Tex. App.—Texarkana May 13, 2015, pet. denied); *McGowan v. State*, 375 S.W.3d 585, 587 (Tex. App.—Houston [14th Dist.] 2012, pet. denied); *Allen v. State*, 218 S.W.3d 905, 909 (Tex. App.—Beaumont 2007, no pet.). And in *Hutton v. State*, the accused was convicted under an earlier version of the stalking statute where the requisite conduct "includ[ed] following the other

13

person," and the accused followed his victims in his car as the victims were on foot and alone. 313 S.W.3d 902, 905, 907 (Tex. App.—Amarillo 2010, pet. denied).

These cases demonstrate conduct "directed specifically" at another evidenced by the accused calling the victim, leaving items with the victim's name on it, or attempting to contact the victim directly. In stark contrast, this record shows that Suzanna never directed her conduct at Hal or his family, never threatened Hal or anyone in his family, and is not stalking Hal. 2RR99-100. Even Hal's wife agreed that Suzanna never called Hal's home, never sent Hal mail, never left things at Hal's house. 2RR61. Hal agreed that Suzanna does not speak to Hal or his family directly. 2RR44.

Instead, the record demonstrates that the interactions between the parties were chance encounters by two people living in the same cities and working in the same industry.[4] Suzanna's Br. at 28-32. With no evidence in the record otherwise, the State attempts to cast Suzanna as a star-struck fan, who masquerades as a journalist to get close to Hal—as alleged by Hal's wife of 11 months. 2RR54, 108. The record forecloses that theory as shown by the multitude of evidence of Suzanna's journalism at community events spanning decades. 2RR67-70, 77-79; Exs. 1-4, 6.

---

[4] Again, the State misrepresents the facts elicited at trial in its assertion that Suzanna was stopped by the police on the same date that she discovered Hal's address in a magazine. State's Br. at 10. To the contrary, Suzanna's testimony was that at the time the police stopped her, she did not know where Hal lived. 2RR80.

14

The State can point to no legally and factually sufficient evidence of any conduct by Suzanna that was a threat of bodily injury or death directed specifically at Hal or his family.

**III.    The State can offer no legal authority to support its assertion that the First Amendment applies any less to citizens not gainfully employed.**

The State's assertion that Suzanna "has knowingly placed Mr. Ketchum and his family in great fear of bodily injury and death due, in part, to the photos she takes of them and her appearances at his concerts," is absurd.  State's Br. at 45. The only evidence in the record that Suzanna ever took photographs of Hal or his family were newspaper articles she wrote and published.  Exs. 1-2.  And the State misrepresents the record in saying that "Appellant alleges…that she sometimes appears at Mr. Ketchum's concerts and takes pictures of his entire family and his home."  State's Br. at 36.  Instead, the record shows that Suzanna testified that she—for publication in periodicals—took pictures of a separate museum near the property on which Hal rents and its owner, but never took pictures of Hal or his family.  2RR89-90, 96.  Hal's wife confirmed this on cross-examination when she backtracked from asserting that Suzanna came on Hal's rented property, to clarify that Suzanna was on the Fischer Store property, a different property with a different owner.  2RR61-62.

Moreover, the State cites no legal authority to support its conclusion that our First Amendment protections are only available when we are successful as

15

measured by salaries and earnings. *See* State's Br. at 47. The State points to no authority holding the First Amendment protection is based on the value of the speech. Instead, speech is protected based on the existence of a targeted audience. *See Porat v. Lincoln Towers Cmty. Ass'n*, 04 CIV. 3199 (LAP), 2005 WL 646093, at *1 (S.D.N.Y. Mar. 21, 2005), aff'd, 464 F.3d 274 (2d Cir. 2006) (holding Porat's photographs of a tower in New York City were not protected from prohibitions of photography after 9/11 because the photographs were not communicative as he had no intended audience for them, except himself and his own "recreational" purposes as a "photo hobbyist."). In contrast, Suzanna's intended audience for her photographs are the readers of the periodicals in which her work is published. Exs. 1-4, 6.

The State's analysis of Tex. Pen. Code §25.07 does not change First Amendment law either, but does disprove the State's earlier arguments of legal sufficiency. The State suggests that Suzanna could not be prosecuted under that provision for "[t]aking photos or images of applicant." State's Br. at 43-44. It posits that Suzanna could not possibly be found to have knowingly or intentionally communicated a threat should an audience member captured in her photograph be Hal, because in such a case, the mental state would be lacking. *See id.* at 44. Yet, to secure this unconstitutionally restrictive Order, the State needed to prove those same elements of knowing conduct that communicated a threat. *See* Section II,

*supra*; Suzanna's Br. at 16-20. And as to this Order, the State asserts that it succeeded because sufficient evidence that Suzanna "knowingly" placed Hal in "great fear" of bodily injury and death was shown in the photographs she allegedly took of him at concerts. State's Br. at 45. Thus, in attempting to explain why the trial court's order does not infringe on Suzanna's First Amendment rights to take photographs, the State concedes Suzanna's taking photographs at music venues cannot be stalking—knowing conduct communicating a threat.

Thus, the suggestion that Suzanna's presence at public music venues armed with camera and recording devices should not enjoy any First Amendment protection is not supported by any authority or the record. The trial court erred in construing the applicable statutory scheme as permitting infringement on Suzanna's First Amendment rights.

## IV. Nor can the State offer any legal authority relieving the State and Hal of their obligations to provide truthful testimony.

The record and Tennessee law both demonstrate that the State provided or failed to correct Hal's false testimony that he obtained a stalking restraining against Suzanna on February 14, 1997 in Davidson County, Tennessee.[5] This protective order was the only piece of documentary evidence the State was

---

[5] "Mr. Ketchum emphatically insisted that he had a prior protective order out of" Davidson County, *Tennessee*, not *Kentucky*. State's Br. at 50.

required by law to provide the trial court,[6] yet, the State offered not a single document into evidence. *See generally* 2RR; 4RR.

The State's arguments in response to Appellant's demonstration that Hal never obtained a restraining order in Tennessee in 1997 is telling for what it does not say: that Hal's testimony on that issue was truthful. And the State doesn't contest that "[a] due-process violation may arise not only through false testimony specifically elicited by the State, but also by the State's failure to correct testimony it knows to be false." *Ex parte Ghahremani*, 332 S.W.3d 470, 477 (Tex. Crim. App. 2011). The State does not deny that Hal provided a signed affidavit saying he obtained a prior order for his protection against Suzanna in Tennessee. State Br. at 1. Nor does the State deny that Hal testified on multiple occasions about this alleged restraining order. 2RR14-15, 27-28, 30, 33-34, 39.

Instead, the State ignores Tennessee law, which did not permit stalking orders of protection until 2005—eight years after Hal claimed to have obtained an

---

[6] Despite pleading that "[d]ue to the immediacy of this application and the unavailability of documentation, any decree which may be required pursuant to Section 82.009 of the Family Code will be filed with this Court before the hearing on this Application," ICR6, the State maintains that "[t]here is no requirement that restraining orders be attached to the protective order applications." Nomenclature aside, the Family Code requires a copy of protective orders to be attached or provided at trial. Tex. Fam. Code Ann. § 82.008. But the State's response is wholly silent on what "documentation" it intended to file, as alleged in its Application. *See generally* State's Br. at 51-52. The only other applicable provision is Section 82.006, which requires a copy of a divorce decree to be attached or filed with the court at the hearing, which would suggest the State alleged a family relationship. Tex. Fam. Code Ann. § 82.006.

order in 1997. Tenn. Code Ann. § 36-3-605; 2005 Tennessee Laws Pub. Ch. 381 (S.B. 645). The State contends that this Court cannot consider this statute because the statute is "outside the [appellate] record." State's Br. at 50, n.1. However, legal practices and procedures under laws outside of Texas "are legislative facts about which a trial or appellate court may take judicial notice without prompting by the parties." *Chen v. Hernandez*, 03-11-00222-CV, 2012 WL 3793294, at *13 (Tex. App.—Austin Aug. 28, 2012, pet. denied) (taking judicial notice of the law regarding obtaining Taiwan passports); *In re Sigmar*, 270 S.W.3d 289, 302 (Tex. App.—Waco 2008, no pet.) (taking judicial notice of a country's compliance with the Hague Convention). Further, "[a] court of appeals has the power to take judicial notice for the first time on appeal."[7] *Office of Pub. Util. Counsel v. Pub. Util. Com'n of Texas*, 878 S.W.2d 598, 600 (Tex. 1994). Thus, contrary to the State's assertion otherwise, this Court may properly consider the law of Tennessee as "unequivocal evidence of false testimony," as well as the full appendix to Suzanna's Brief. State's Br. at 50.

And the State now attempts to justify the falsity of Hal's testimony by asserting that there is some distinction between the colloquially interchangeable terms, "restraining order" and "protective order." *See* State's Br. at 3, 51 (acknowledging that Hal used the terms interchangeably, but suggesting that Hal's

---

[7] Suzanna requests this Court take judicial notice of the applicable Tennessee law.

testimony was not false because he swore he received a "restraining order," not a "protective order"). There can be no mistake that Hal testified that "there was an anti-stalking law and restraining order in Nashville that was implemented on my behalf," and that it permitted him to show a picture of Suzanna to the police and ask the police to exclude Suzanna from public premises. 2RR14. Hal further testified that he told at least three venue owners that he had a restraining order against Suzanna and they should exclude her from their properties. 2RR39. No matter how the State, on appeal, seeks to standardize the nomenclature of its allegations, calling what Hal said he had a "restraining order" as opposed to a "protective order" cannot change Texas law which requires truthful testimony.

Further, even assuming the State's contention that headings in the Application govern the construction of the body of the Application is correct, State's Br. at 51, the State's pleading provided that Hal's supporting affidavit was incorporated by reference into the Application as if set forth in full therein. ICR6, 8-9. Thus, the State's pleading made false claims when alleging the grounds for stalking in its Application.

In light of the record and the law, this false testimony elicited and failed to correct permeated the evidence at trial, and prevented Suzanna from having a fair trial, which resulted in this restrictive Order. Her due process rights were violated.

20

**V.  The State misunderstands the civil procedural rules as to error preservation; waiver; findings of facts and conclusions of law; and formal bills of exception.**

The State turns to waiver and asserts procedural failings because no legal arguments the State could offer disprove what the record shows:  that the trial court erred in entering such a restrictive protective order against Suzanna that endures for her lifetime and is wholly incongruous to the scant evidence of stalking the State could muster.  But the State misunderstands the procedural rules, and all of its waiver arguments fail, for the reasons below.

As a foundational principle, "[a] party preserves error by a timely request that makes clear—by words or context—the grounds for the request and by obtaining a ruling on that request, whether express or implicit." *In re Commitment of Hill*, 334 S.W.3d 226, 229 (Tex. 2011); *see* Tex. R. App. P 33.1.  "A ruling is implicit if it is unexpressed but capable of being understood from something else." *Well Solutions, Inc. v. Stafford*, 32 S.W.3d 313, 316 (Tex. App.–San Antonio 2000, no pet.).  These are the rules, "[b]ut [error preservation] rules are not traps." *Hyundai Motor Co. v. Vasquez*, 189 S.W.3d 743, 766 (Tex. 2006).  Instead, "[p]reservation rules exist to inform courts of error in a plain and timely manner so that they can make informed rulings."  *Id.* at 767.  And where the trial court acknowledges that it understood the basis of a request, but permitted no further argument or refused to grant it, this is sufficient to preserve error. *Ford Motor Co.*

21

*v. Castillo*, 279 S.W.3d 656, 661 (Tex. 2009) (concluding that because "the trial court clearly understood [the party's] request and just as clearly refused to grant it," this was sufficient to preserve error).

As discussed below, Suzanna has not waived any of her appellate arguments.

## A. Suzanna has not waived her First Amendment Rights.

Contrary to the State's assertion, Suzanna did not contend, "for the first time on appeal, that the statutory framework is unconstitutional and that the trial court's lifetime protective order" infringes on Suzanna's First Amendment rights to take photos. State's Br. at 19. The record shows that the trial court was made aware of the issue and ruled upon it, prior to appeal.

Proceeding pro se, Suzanna informed the court that she wanted a new trial because "the facts *and the law* does not support the order."[8]  CR26 (emphasis added).  A hearing was held on that motion within the trial court's plenary power. 3SRR1-23.  At that time, and even now, the trial court could (and still can) modify the protective order because "[d]uring the effective period of a protective order, the trial court retains the power and jurisdiction to modify the order." *In re S.S.*, 217 S.W.3d 685, 687 (Tex. App.—Eastland 2007, no pet.); *B.C. v. Rhodes*, 116 S.W.3d 878, 881 (Tex. App.—Austin 2003, no pet.); Tex. Fam. Code Ann. § 87.001 (governing procedural steps for modification of a protective order); Tex. Fam.

---

[8] The State misstates the record in contending that Suzanna's motion for new trial requested a new trial "based on the facts does not support the order."  State's Br. at 17, 40.

22

Code Ann. § 85.025(b) (setting timeline for motions to modify). The effective period of the Order is the rest of Suzanna's life. 3SCR9.

At the hearing on Suzanna's motion for new trial, granted only ten minutes on a one-hour setting, 2SRR3, Suzanna's counsel stated before the trial court interjected: "I just want to make the Court aware of we all have a Constitutional right to take pictures of things that are in the public. If we are telling Ms. Eckchum that she can't take pictures at some extent we're infringing—" 3SRR15. The trial court interjected by asking Suzanna's counsel how she would recommend that the court make the order more specific, and she responded that she couldn't offer a recommendation. 3SRR16.

After more discussion, the trial court denied the motion for new trial and modified its order. 3SRR17-19. But even after the denial, Suzanna's counsel twice persisted and insisted that the trial court reconsider the constitutional challenges, stating "Your Honor, I know you have already overruled the motion, but…if she can't go to a venue to take pictures of anyone else who may be there just because Hal Ketchum is there or is scheduled to be there…she basically can't do her job and that brings up—" 3SRR19-20. The trial court again interjected stating that Suzanna's right to earn a living through her photography was less important than Hal's desire to feel protected, especially considering that "she wasn't making much, if any money," from her photography. 3SRR20. And one

final time, Suzanna's counsel tried, in vain, to convince the trial court to reconsider its position on Suzanna's constitutional rights informing the trial court that the criminal provisions at issue were unconstitutional. 3SRR21.

After all of that, the State on appeal asserts that Suzanna waived her constitutional rights because "Appellant never mentioned any First Amendment issues" and the court could not "clearly understand what was alleged as error." State's Br. at 42. To the contrary, Judge Stephens stated in response to Suzanna's final attempt to have the trial court reconsider its position on Suzanna's constitutional rights: "Well, I understand it." 3SRR22. The trial court continued by denying Suzanna's constitutional arguments because (1) they were not raised at the original hearing and (2) Suzanna did not provide notice to Texas Attorney General of her constitutional challenges to the applicable statutes.[9] 3SRR22. The trial court curtailed any further argument on the constitutional issues. *See id.* Again, the record disproves the State's assertion that Appellant never mentioned any First Amendment issues. 3SRR15, 19-20. The constitutionality of the applicable statutory scheme prohibiting Suzanna from taking pictures was before

---

[9] The trial court seems to have been referencing a statute requiring a party who challenged a statute's constitutionality to file notice of the challenge with the Texas Attorney General, Tex. Gov't Code Ann. § 402.010, held to be an "unconstitutional violation of separation of powers." *Ex parte Lo*, 424 S.W.3d 10, 30 (Tex. Crim. App. 2013); *but see In re State*, 04-14-00282-CV, 2014 WL 2443910, at *3 (Tex. App.—San Antonio May 28, 2014, no pet.) (holding that the "holding in *Ex parte Lo* is not binding in this civil proceeding").

24

the trial court, and the trial court denied the challenge, at least by denying the motion for new trial.

Furthermore, to the extent the State is suggesting that Suzanna's First Amendment rights were waived because the magic words "First Amendment" weren't uttered, the State is misguided. In interpreting criminal statutes like the ones at issue, the Texas Court of Criminal Appeals has held that "[s]traightforward communication in plain English will always suffice." *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992). The "cases do not stand for the proposition that a specific constitutional provision that is cited on appeal must also have been cited to the trial judge." *Clarke v. State*, 270 S.W.3d 573, 582-83 (Tex. Crim. App. 2008). "As regards specificity, all a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Lankston*, 827 S.W.2d at 909. "The fact that the legal argument was not presented in his original written motion [for new trial] does not prevent appellant from having his claim heard on appeal. The argument was presented to the trial judge in time for him to rule on it. That is all that is required." *Clarke v. State*, 270 S.W.3d 573, 580 (Tex. Crim. App. 2008)

Thus, the law—and the record—do not support the State's theory of waiver of Suzanna's First Amendment rights.

**B.      Suzanna's "general" pro se motion for new trial did not waive appellate arguments.**

"A point in a motion for new trial is *not* a prerequisite to a complaint on appeal in either a jury or a nonjury case," except in one of five enumerated instances, none of which apply to this case.  Tex. R. Civ. P. 324 (emphasis added).  Further, the State is incorrect that Suzanna's motion for new trial, sought to or even needed to, preserve any factual or legal sufficiency claims.  *See* State's Br. at 41.  It is well-known that "[i]n a nonjury case, a complaint regarding the legal or factual insufficiency of the evidence…may be made for the first time on appeal in the complaining party's brief."  Tex. R. App. P. 33.1.

The trial court denied Suzanna's motion for new trial, but did comply with legal authority holding that it should have ruled on the motion.  *See David v. David*, 09-00-339CV, 2002 WL 1071432, at *1 (Tex. App.—Beaumont May 30, 2002, no pet.) (holding that a pro se litigant's motion for new trial was properly considered even though it was overly general because "pro se pleadings are evaluated under more lenient standards than those applied to formal pleadings drafted by lawyers").

There is no waiver here.

**C.     Suzanna's challenge to this void Stalking Protective Order when the State's pleading requested a Family Violence Protective Order cannot be waived.**

This Order is void because the State's pleading did not request a stalking protective order, and thus did not invoke the trial court's jurisdiction. Section I, *supra*. As noted above, "the trial court's jurisdiction to render judgment is invoked by pleadings, and that part of a judgment the pleadings do not support is void." *Hubbard*, 576 S.W.2d 163 at 166. Texas law is clear that "[t]he question of jurisdiction is fundamental and can be raised at any time." *Tullos v. Eaton Corp.*, 695 S.W.2d 568 (Tex. 1985).

Thus, the State's response to Suzanna's assertion that the Order is void with arguments regarding waiver of due process and notice misses the mark.

**D.     The absence of the trial court's findings of facts and conclusions of law does not deny this Court the ability to review all the evidence in the record to set aside the trial court's findings.**

The State suggests that this Court should turn a blind eye to the contradictory evidence and facts shown in the record because the trial court determined that stalking occurred and Suzanna did not request findings of facts and conclusions of law. State's Br. at 22-23. To the contrary, in determining the factual sufficiency in a protective order finding, this Court should "consider, weigh, and examine all of the evidence in the record, both supporting and against the finding, to decide whether the finding should be set aside." *Godfrey v.*

*Godfrey*, 03-07-00220-CV, 2008 WL 3166328, at \*1 (Tex. App.—Austin Aug. 8, 2008, no pet.). While facts to support a judgment are implied when a trial court does not issue findings of fact and conclusions of law, "[w]hen the appellate record includes the reporter's and clerk's records, these implied findings are not conclusive and may be challenged for legal and factual sufficiency in the appropriate appellate court." *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002).

This Court may properly consider the full record even in the absence of findings of fact and conclusions of law.

**E.**     **No formal bill of exception was necessary in this case, and certainly not to show the falsity or improper exclusion of Hal's testimony.**

The State contends that Appellant needed to file a formal bill of exception for this Court to consider evidence of Hal's false testimony and the trial court's improper exclusion of Hal's testimony. State's Br. at 21, 48. No such thing is needed for this Court to take judicial notice of Tennessee law. *See* Section IV, *supra.* And "[w]hen cross-examination testimony is excluded, appellant need not show the answer to be expected but only need show that the substance of the evidence was apparent from the context within which the question was asked." *In re Commitment of Smith*, 422 S.W.3d 802, 808 (Tex. App.—Beaumont 2014), review denied (Apr. 11, 2014). During cross-examination, Hal was asked what

28

contact Suzanna had with him since 1997 and how she had threatened him. Suzanna's Br. at 47-49. It is apparent from the context of those questions that the substance of the evidence sought was Hal's testimony as to what, if anything, Hal believed Suzanna had done to him since 1997. And because the trial court excluded this testimony, the record is silent as to those allegations. No formal bill of exception was required.

**VI.    If the Court does not void or vacate this improvidently granted Stalking Protective Order, it should at least grant Suzanna a new hearing and modify the restrictions in the order.**

The State does not even try to justify the excessive provisions in the Order by pointing to other orders with similarly large distances for stay-away provisions of lifetime durations. And while the State cannot point to a stalking protective order upheld on appeal, a search for family violence protective order yielded stay-away provisions dwarfed by the 1,000 yards the trial court originally ordered. *See e.g., Daniels v. Funes*, 03-10-00317-CV, 2011 WL 2437692, at \*4 (Tex. App.—Austin June 17, 2011, pet. denied) (300 yards); *Sharpe v. McDole*, 03-09-00139-CV, 2010 WL 2010849, at \*1 (Tex. App.—Austin May 19, 2010, pet. denied) (200 yards); *Erlewine v. Erlewine*, 03-06-00308-CV, 2007 WL 2462042, at \*5 (Tex. App.—Austin Aug. 29, 2007, no pet.) (same).

Contrary to the trial court's implicit finding, the excessive restrictions in this Order were not necessary for Hal's protection. Suzanna cannot attend music

venues where she regularly performs. 2RR84, 114-115, 119 (testifying that Suzanna regularly plays at the Cypress Creek Cafe, which the trial judge did not hear). For the rest of Suzanna's life, she cannot be found within 1,000 feet of any place near a school located in a central business district in Wimberley. 3SCR7-10; 3SRR13-14. And this is all in addition to being unable to photograph for the rest of her life. *Id.* These restrictions are incongruous with the scarcity of evidence of Suzanna's conduct that would constituted the criminal offense of stalking. The only reasonable decision was for the trial court to make a finding of no stalking. The trial court abused its discretion.

Respectfully submitted,


By:  */s/ Mysha Lubke*
    Mysha Lubke
    State Bar No. 24083423
    mysha.lubke@bakerbotts.com
    BAKER BOTTS L.L.P.
    98 San Jacinto Blvd., Suite 1500
    Austin, TX 78701
    Telephone:  (512) 322-2500
    Facsimile:   (512) 322-2501

ATTORNEY FOR APPELLANT
SUZANNA ECKCHUM

31

## CERTIFICATE OF COMPLIANCE

As required by Texas Rule of Appellate Procedure 9.4(i)(3), I certify that this brief contains no more than 7,499 words, excluding the parts of the brief exempted by Rule 9.4(i)(l).

*/ s / Mysha Lubke*
Mysha Lubke

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served by electronic mail and by fax on this 30th day of November, 2015:

***Counsel for the State of Texas for the Protection of Hal Ketchum:***

Nick Robinson
The Honorable Jennifer A. Tharp
Comal County Criminal District Attorney
150 North Seguin, Suite 370
New Braunfels, Texas 78130

*/ s / Mysha Lubke*
Mysha Lubke